TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-97-00805-CV







Texas Parks and Wildlife Department, Appellant



v.



Ernest Ray Davis, Jr., Appellee








FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT


NO. 15,691, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING








 Appellee, Ernest Ray Davis, Jr., sued appellant, Texas Parks and Wildlife
Department (the "Department"), for personal injuries he sustained when a concrete bench
collapsed under him at Inks Lake State Park, which is operated by the Department. After the jury
returned a verdict in favor of Davis, the trial court rendered judgment for Davis and sanctioned
the Department for its alleged failure to negotiate in good faith during court ordered mediation. 
The Department appeals the trial court judgment on four grounds. We will affirm the judgment
rendered on the jury verdict as to liability and damages as well as that part of the sanction
imposing costs of mediation; we will reverse the part of the sanction awarding attorney's fees.


BACKGROUND

 On September 6, 1992, Davis and his family went to Inks Lake State Park ("Inks
Lake") to celebrate Labor Day. Davis sat on a concrete picnic bench at the family's assigned
campsite intermittently throughout the day. At approximately 3:00 p.m. the bench collapsed under
Davis without warning, injuring him.

 Davis sued the Department, an agency of the State of Texas, pursuant to the Texas
Tort Claims Act. See Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (West 1997) ("Tort
Claims Act," "Act"). The parties proceeded to a jury trial. After Davis presented his case, the
Department moved for a directed verdict, claiming that it was entitled to governmental immunity
for two reasons. First, it argued that the Tort Claims Act did not apply in Davis's case because
the bench in question was built before January 1, 1970, and the Act "does not apply to a claim
based on an act or omission that occurred before January 1, 1970." Tort Claims Act § 101.061. 
Next, the Department argued that the decision not to remove the bench was discretionary and was
therefore protected by section 101.056 of the Act, which exempts discretionary governmental
decisions from liability. See id. § 101.056.

 The trial court overruled the motion and submitted the case to the jury. The jury
returned a verdict in favor of Davis, and the trial court rendered judgment for Davis. The trial
court also sanctioned the Department for its alleged failure to engage in court ordered mediation
in good faith by awarding Davis $250.00 as reimbursement for his mediation fee and $1,200.00
for attorney's fees incurred in connection with the mediation. The Department filed a Motion for
Judgment Notwithstanding the Verdict and For New Trial on substantially the same grounds stated
above. The Department further alleged that the trial court erred in the jury charge because it
failed to submit a question establishing Davis's status as either an invitee or a licensee at the time
of the accident. (1) Instead, the negligence question in the jury charge assumed Davis's status as an
invitee and imposed a higher duty of care on the Department. The trial court overruled the
Department's motion.

 The Department raises four issues on appeal. It reasserts its right to immunity in
the first two issues, and it complains that the trial court erred by denying its requested question
on Davis's status in the third issue. In its fourth issue, it urges this Court to reverse the trial
court's monetary sanction against the Department. 


DISCUSSION

Governmental Immunity

 A Texas state agency, such as the Department, may not be sued for the torts of its
agents in the absence of a constitutional or statutory provision that waives the State's governmental
immunity for the alleged wrongful act. See Lowe v. Texas Tech Univ., 540 S.W.2d 297, 298
(Tex. 1976). Davis bases his cause of action against the Department on the provision in the Texas
Tort Claims Act waiving immunity for "personal injury or death so caused by a condition or use
of personal or real property if the government unit would, were it a private person, be liable to
the claimant according to Texas law." Tort Claims Act § 101.021(2).

 The Department contends that because the parties stipulated that the structure that
injured Davis was built before January 1, 1970, and because Davis failed to satisfy his burden to
prove the Department committed an act or omission after that date, the Tort Claims Act does not
apply and the Department is entitled to judgment as a matter of law. See id. § 101.061. The
construction of a statute is a question of law for the court, and we consider the issue de novo. See
City of Dallas v. Cornerstone Bank, 879 S.W.2d 264, 269 (Tex. App.--Dallas 1994, no writ).

 We disagree with the Department's position. In Maxwell v. Texas Department of
Transportation, 880 S.W.2d 461 (Tex. App.--Austin 1994, writ denied), this Court held that the
State is entitled to immunity if it can prove that the structure "was completed before 1970 and has
remained in the same condition since that time." Maxwell, 880 S.W.2d at 465 (emphasis added). 
The evidence presented at trial established that in December 1991 the legal counsel for the
Department wrote a memo to the Chief of Park Operations, recommending an inspection of all the
concrete benches in the park system and the removal of any unsafe benches. This memo was
prompted by a jury verdict in favor of a park patron who was injured when a bench collapsed
under her at the Lake Corpus Christi State Recreation Area. Some time after this memo
circulated, the park manager at Inks Lake instructed the assistant park manager to have someone
inspect all of the concrete picnic table and bench combinations at Inks Lake for signs of
deterioration. In April 1992, the assistant manager at Inks Lake assigned the inspection to an
employee. The employee developed a code to describe the condition of each picnic table at the
numbered campsites; two stars meant the table needed to be replaced first, one star meant it
needed to be replaced, and a question mark and a star meant it needed to be replaced some day. 
The picnic table bench that injured Davis was assigned one star. The employee also wrote "one
bench top and legs cracked (bad)" to describe the condition of the bench. She turned in her report
to the assistant manager on April 23, 1992, who forwarded it to the Operations and Maintenance
Specialist Supervisor for the region in which Inks Lake is located. The Department removed the
picnic table and bench combination after it collapsed and injured Davis on September 6, 1992. 

 The report describing the condition of the bench in April 1992 makes clear that, at
the time the bench collapsed, it was not in the same condition it was in when it was constructed. 
The report also supports Davis's claim that the Department had actual knowledge of the changed
condition and failed to remove the bench or warn the public of the danger. Under section
101.022(a) of the Tort Claims Act, the State owes visitors who pay a fee to use its facilities the
same duty a private owner owes an invitee. See Tort Claims Act § 101.022(a). A landowner
owes an invitee the duty to use reasonable care to reduce or eliminate a condition posing an
unreasonable risk of harm about which the landowner knew or should have known. See State
Dep't of Highways v. Payne, 838 S.W.2d 235, 237 (Tex. 1992). Assuming Davis paid the entry
fee customarily charged at Inks Lake, (2) the Department owed him the duty owed to an invitee. The
jury found that the Department breached that duty, and that the breach proximately caused Davis's
injuries.

 The Department's reliance on cases such as The University of Texas-Pan American
v. Valdez, 869 S.W.2d 446 (Tex. App.--Corpus Christi 1993, writ denied) is misplaced. In
Valdez, Valdez alleged that the University was negligent in failing to correct or warn of the
defective placement of an outfield fence surrounding a baseball field. See id. at 447. There was
no allegation that the condition of the fence had changed in any way since its original construction,
or that a changed condition contributed to Valdez's injury. The court rejected Valdez's claim that
the act or omission occurred on the date of his injury, holding instead that the act or occurrence
giving rise to Valdez's claim was the actual construction and placement of the baseball field and
the outfield fence. See id. at 449.

 In this case, Davis has not alleged a design defect and has never complained of the
original construction or location of the bench; therefore, the pre-January 1, 1970 construction is
not the act or occurrence giving rise to Davis's cause of action. Rather, Davis complains of the
Department's failure to reduce or eliminate a known dangerous condition that developed after
January 1, 1970. The failure to reduce or eliminate the dangerous condition posed by the cracks
in the bench constitutes an act or omission that subjects the Department to tort liability under
section 101.021(2) of the Tort Claims Act. The Department's first issue is overruled.

 In its second issue, the Department contends that even if it committed an act or
omission that would bring it within the purview of the statute, the decision not to remove the
bench was a discretionary act protected by the Tort Claims Act. See Tort Claims Act
§ 101.056(2) (excepting from liability the performance or nonperformance of an act committed
to agency discretion). It is well established that the discretionary act exemption in section
101.056(2) applies only to governmental policy decisions. See State v. Terrell, 588 S.W.2d 784,
787-88 (Tex. 1979); Simons v. City of Austin, 921 S.W.2d 524, 528 (Tex. App.--Austin 1996,
writ denied). Davis asserts that the decision not to remove the bench was not a protected policy
decision, but rather an occupational or professional decision. We agree. 

 In Maxwell, this Court held that "[a]ctions involving occupational or professional
discretion are devoid of policy implications." Maxwell, 880 S.W.2d at 464. For example, a
physician at a veterans' hospital exercises his or her professional discretion in deciding whether
to operate on a patient. See Christilles v. Southwest Tex. State Univ., 639 S.W.2d 38, 42 (Tex.
App.--Austin 1982, writ ref'd n.r.e.) (quoting 3 Kenneth C. Davis, Administrative Law Treatise
§ 25.08, at 403-04 (Supp. 1982)). The State is liable for its employees' negligent exercise of
professional discretion. See Christilles, 639 S.W.2d at 42. We hold that the assistant manager
at Inks Lake exercised his professional discretion when he decided not to assign an employee the
task of removing the deteriorating bench that eventually injured Davis. The Department's second
issue is overruled. 


Davis's status as a licensee or an invitee

 In its third issue, the Department complains that the trial court erred when it denied
the Department's request for the submission of a jury question regarding Davis's payment of the
entry fee to Inks Lake. Under section 101.022(a) of the Tort Claims Act, a claimant in a premises
defect case is treated as a licensee "unless the claimant pays for the use of the premises." Tort
Claims Act § 101.022(a). One who pays for entry becomes an invitee. The licensee must prove
that the landowner had actual knowledge of the condition and that the licensee had no knowledge
of the condition. See Payne, 838 S.W.2d at 237. An invitee need only show that the landowner
should have known of the condition; the invitee's own knowledge is not an issue. See id. 

 The trial court must submit questions, instructions, and definitions that are raised
by the pleadings and evidence. See Tex. R. Civ. P. 278; see also Artripe v. Hughes, 857 S.W.2d
82, 85 (Tex. App.--Corpus Christi 1993, writ denied) ("Only disputed questions of material fact
are to be submitted to the factfinder for resolution."). The Department contends that the evidence
raised a fact issue as to payment, so the issue should have been determined by the jury. 
Furthermore, the Department argues that if the jury found against Davis on the issue of payment,
the licensee standard would have been used, and the evidence establishing that Davis worked for
the Department and removed deteriorating concrete picnic tables at another park would have
shown Davis had knowledge of the condition; thus, the Department might have avoided liability. 
The trial court, however, determined that the Department presented no evidence of nonpayment
and submitted the charge to the jury with instructions defining the standard of care owed to an
invitee. 

 We agree with the trial court's determination. A visitor to the park is required to
pay an admission fee. The Department introduced no evidence that Davis did not pay the entry
fee at Inks Lake. It only presented evidence that there was an unwritten policy allowing
Department employees complimentary entrance into its parks but that no records were kept to
determine whether a person paid for entrance to the park for day visits. Davis was a seasonal
employee for the Department at the time of the accident. He testified that he knew he did not have
to pay for entry into the park where he was employed, but that he did not know that he did not
have to pay to get into other parks. The Department attempted to establish that Davis had
knowledge of the unwritten policy through his work as a reservations clerk; however, it
established only that Davis worked in that position after his accident.

 Although in his deposition Davis stated that he did not remember whether he paid
the entry fee, Davis affirmatively testified at trial that he paid for entry into Inks Lake. Davis's
wife also testified at trial that she remembered that Davis paid for entry because when she asked
Davis if he got in for free, he said that he did not because he did not identify himself as a park
employee. The Department contends that Davis's lapse of memory at his deposition and his wife's
question create a fact issue. We disagree. Davis's testimony that at the time of the deposition he
did not recall whether he paid the fee is not in conflict with his later trial testimony that he did pay
the fee; therefore, no fact issue is raised. Furthermore, even if Davis's response to his wife's
question might create an inference that Davis thought he could enter the park without paying, one
cannot reasonably draw the second inference that Davis therefore did not pay when both Davis and
his wife affirmatively testified that he did pay. "[A] proponent cannot establish a critical fact by
'piling inference upon inference.'" William Powers, Jr. & Jack Ratliff, Another Look at "No
Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515, 521 (1991). Because we cannot say
that the trial court erred by not submitting a question as to Davis's status, the Department's third
issue is overruled. 


Sanctions

 In its final issue, the Department contends that the trial court erred in sanctioning
the Department for its alleged failure to negotiate in good faith during court ordered mediation. 
The trial court awarded Davis $250.00 as reimbursement for his mediation fee and $1,200.00 for
attorney's fees incurred in connection with the mediation. 

 Chapter 154 of the Texas Civil Practice and Remedies Code establishes procedures
for a trial court, on its own motion, to refer a dispute to an alternative dispute resolution ("ADR")
procedure. See Tex. Civ. Prac. & Rem. Code § 154.021(a) (West 1997). While a court may
compel parties to participate in mediation, it cannot compel the parties to negotiate in good faith
or settle their dispute. See Decker v. Lindsay, 824 S.W.2d 247, 250-51 (Tex. App.--Houston [1st
Dist.] 1992, orig. proceeding). Furthermore, section 154.073 requires that communications and
records made in an ADR procedure remain confidential; consequently, the manner in which the
participants negotiate should not be disclosed to the trial court. See Tex. Civ. Prac. & Rem. Code
§ 154.073 (West 1997).

 We decline to follow Texas Department of Transportation v. Pirtle, ___ S.W.2d
___, No. 02-97-233-CV, 1998 WL 286589 (Tex. App.--Fort Worth June 4, 1998, pet. denied),
cited by Davis, because the court of appeals in Pirtle based its opinion on facts not present in this
case. In Pirtle, the Texas Department of Transportation did not file a written objection within ten
days after the trial court ordered the parties into ADR. See Pirtle, slip op. at 2. Instead, the
Department of Transportation attended the mediation but refused to participate. See id. The court
of appeals determined that it was not an abuse of discretion for a trial court to assess costs against
a party when that party "does not file a written objection to a court's order to mediate, but
nevertheless refuses to mediate in good faith." Id. at 3. In this case, the Department did file an
objection, which the trial court overruled. Nevertheless, the Department attended the mediation
and made an offer, so it cannot be said that it did not participate in the mediation. We sustain the
Department's complaint as to the trial court's award of attorney's fees as a sanction for the
Department's alleged failure to negotiate in good faith.

 Finally, we address the mediation fee. Chapter 154 requires the court to "tax the
fee for services of an impartial third party as other costs of the suit." Tex. Civ. Prac. & Rem.
Code § 154.054(b) (West 1997). In its judgment, the trial court properly awarded Davis all
original costs associated with the suit. Because the $250.00 mediation fee is an original cost under
section 154.054(b), and because the trial court properly awarded Davis the costs expended for the
suit, there is no error in taxing the mediation fee against the Department. 


Conclusion

 For the reasons stated above, we conclude that the Department is not entitled to
governmental immunity in this case, that the trial court did not err in denying the Department's
request for a jury question on the issue of entry fee payment, and that the trial court properly
awarded Davis the cost of his mediation fee. We hold that the award of attorney's fees incurred
in connection with the mediation was improper.

 Accordingly, we reverse that part of the trial court judgment sanctioning the
Department for its alleged failure to negotiate in good faith and render judgment that Davis take
nothing in attorney's fees; we affirm the remainder of the judgment.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Powers and B. A. Smith

Affirmed in Part; Reversed and Rendered in Part

Filed: December 10, 1998

Publish
1. Under section 101.022 of the Act, a claimant in a premises defect case is treated as a licensee
"unless the claimant pays for the use of the premises." Tort Claims Act § 101.022(a) (West 1997)
.
2. We recognize that the Department contests whether Davis paid the entry fee.



ed in connection with the mediation. 

 Chapter 154 of the Texas Civil Practice and Remedies Code establishes procedures
for a trial court, on its own motion, to refer a dispute to an alternative dispute resolution ("ADR")
procedure. See Tex. Civ. Prac. & Rem. Code § 154.021(a) (West 1997). While a court may
compel parties to participate in mediation, it cann