CMH HOMES, INC. and CMH Homes, Inc. d/b/a Luv Homes, Petitioners,

v.

Kirk DAENEN, Respondent.

No. 98–0888.

Supreme Court of Texas.

Argued Sept. 8, 1999.

Decided Feb. 10, 2000.

Rehearing Overruled May 4, 2000.

---

Dana C. Livingston Cobb, Douglas W. Alexander, Austin, William H. Luck, Bellaire, Michael W. Eady, Austin, Walter Clay Coke, Houston, for Petitioners.

Kevin H. Dubose, Houston, Michael E. St. John, San Antonio, Richard P. Hogan, Jr., Houston, William Powers, Jr., Austin, for Respondent.

## OPINION

Justice OWEN delivered the opinion of the Court.

In this premises liability case, the plaintiff injured his back when he stepped onto unstable steps while carrying a heavy load. The issue is whether there is some evidence that the premises owner knew or had constructive knowledge of this unreasonable risk of harm because (1) the owner knew that the steps would require repair and replacement over time, (2) the owner knew that in the past, the steps had been rendered unsafe when trucks backed into them, and (3) after the steps were replaced with metal ones, they have not become unstable. The trial court rendered judgment for the plaintiff, and the court of appeals affirmed. We hold that there is no evidence that the steps posed an unreasonable risk of harm when they were installed, and there is no evidence that when the steps had become unstable, the premises owner had actual or constructive knowledge of that unreasonable risk of harm. Accordingly, we reverse the judgment of the court of appeals and render judgment for the premises owner.

## I

CMH Homes, Inc. sells mobile homes. One of its locations is Luv Homes in Tomball, Texas. The plaintiff in this case, Kirk Daenen, had delivered mobile home parts about twenty times in the past to the supply shed at Luv Homes. The shed was a converted mobile home, and its only entrance was accessed by a stand-alone unit that had three steps leading to a platform. Daenen testified that the platform and step unit consisted of a metal frame and metal braces with wooden treads. The unit was not secured to the mobile home but was placed flush against the entrance.

Daenen explained that on the day he was injured, he had backed the bob-tail truck he was driving up to the entrance of the supply shed, covering the lower two or perhaps all three steps leading to the platform. His plan was to drop directly from the back of the truck onto the platform, which was about two and a half feet below the truck's bed. The boxes he was to unload weighed about seventy pounds each. He had no trouble unloading the first box. However, when he stepped off the back of the truck carrying the second, the step and platform unit swayed from side to side. Daenen felt a sharp pain in

his back, and he dropped the box he was carrying. He then resumed unloading the truck and reported his injury to his office the next morning.

Prior to Daenen's injury, CMH had replaced the step and platform unit leading to its supply shed a number of times. There was evidence that over the course of twelve to fifteen months, the steps would become unstable due to their heavy use, and CMH would install a new unit. From time to time, the steps were also hit by trucks and were replaced if they could not be repaired. There was no evidence of how long the particular unit on which Daenen was injured had been in use, and there was no evidence that a truck had hit or damaged it.

The evidence was not entirely clear about the materials out of which the step and platform units had been made before CMH installed the one on which Daenen was injured. Witnesses referred to the previous units as "wooden." It is undisputed however that after Daenen was injured, CMH installed a unit made entirely of metal. At the time of trial, that same metal fixture had been in use for about three and a half years, had not become unstable, and had not needed replacement.

Daenen subsequently sued CMH on a premises liability theory. The jury found in his favor and awarded $853,278 in actual damages. The trial court added prejudgment interest and rendered a judgment on the verdict for Daenen against CMH in the amount of $1,043,873.10. The court of appeals affirmed that judgment. *See* 971 S.W.2d at 190. In this Court, CMH contends that there is no evidence to support the jury's verdict and that venue was improper in Montgomery County. We agree with CMH that the evidence presented at trial is legally insufficient to support liability and that CMH is therefore entitled to rendition of judgment in its favor. Accordingly, we do not reach the venue question, which if sustained would only result in a remand. *See Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677

(Tex.1999) (explaining that generally, when a party presents multiple grounds for reversal of a judgment on appeal, appellate courts should first address issues that would require rendition); *see also Lone Star Gas Co. v. Railroad Comm'n*, 767 S.W.2d 709, 710–11 (Tex.1989).

## II

■ Daenen's primary theory of premises liability is that the steps used by CMH presented an unreasonable risk of harm from the moment they were placed in front of the entrance to the supply shed and that CMH had actual knowledge of that risk. Daenen reasons that CMH knew that over time, the step and platform unit inevitably would become unstable and would have to be replaced. Daenen also points out that CMH knew that the unit could become unstable at any time if a truck hit and damaged it, and that the metal unit CMH has used since his injury has not become unstable after more than three years of use.

Daenen contends that the step and platform unit is analogous to the grape display at issue in *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex.1983), in which we held that there was some evidence of a condition that presented an unreasonable risk of harm. We said in *Corbin*, as we have said in many cases, that when the injured party is an invitee, as Daenen was, the elements of a premises claim are:

(1) Actual or constructive knowledge of a condition on the premises by the owner or occupier;

(2) That the condition posed an unreasonable risk of harm;

(3) That the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and

(4) That the owner or occupier's failure to use such care proximately caused the plaintiff's injury.

*See Corbin*, 648 S.W.2d at 296; *see also Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex.1998); *Motel 6 G.P.*,

*Inc. v. Lopez,* 929 S.W.2d 1, 3 (Tex.1996); *Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992); RESTATEMENT (SECOND) OF TORTS § 343 (1965) .

In *Corbin,* the plaintiff slipped and fell on a grape that was on the floor in front of a grape display. *Corbin,* 648 S.W.2d at 294. Safeway, the premises owner, had directed each of its stores to keep large, non-slip mats in front of these displays because Safeway knew that if grapes fell on the floor, someone could slip and be injured. See *id.* The plaintiff in *Corbin* contended that there were three dangerous conditions. The first was the presence on the floor of the specific grape on which Corbin fell. He argued that Safeway had constructive knowledge of this condition because when he fell, other grapes lying around him were discolored and ruptured. *See id.* at 296. We held that this was legally insufficient evidence "to prove that the grapes had been on the floor a sufficient time to impute knowledge of their location to Safeway." *Id.* The "aging and discoloration may just as likely have occurred before as after the grapes fell." *Id.* We also held that there was no evidence to support Corbin's second theory, which was that the floor was excessively dirty. *See id.*

Corbin's third theory was that the manner in which the grapes were displayed created an unreasonable risk of harm. *See id.* The self-service grape bin at issue displayed green grapes, slanted towards a green linoleum tile floor, and was open with no covering. *See id.* Customers frequently knocked grapes off stems or dropped them, and the bin was a continual source of slippery material. *See id.* at 294. Corbin testified that there was no mat in front of the display where he fell. *See id.* We held that a jury could conclude from this evidence that the manner of displaying the grapes posed an unusually high risk of injury and that because the store was responsible for placing a mat in front of the grape display, the absence of a mat was some evidence that Safeway had knowl-edge of the unreasonable risk. *See id.* at 296–97.

In *H.E. Butt Grocery Co. v. Resendez,* 988 S.W.2d 218 (Tex.1999), we contrasted the facts presented in *Corbin.* In *Resendez,* the injured party contended that because H.E.B. displayed its grapes in a self-service bin that permitted shoppers to sample the fruit, there was an unreasonable risk that customers would slip on grapes that fell to the floor. *See id.* at 218. We disagreed, noting the lengths to which H.E.B. had gone to prevent grapes from falling from the display, the mats it had in place, and the warnings cones it had posted. *See id.* at 218–19. We held that "the mere fact that a store has a customer sampling display cannot, without more, be evidence of a condition on the premises that poses an unreasonable risk of harm." *Id.* at 219.

Daenen contends that CMH's step and platform unit was no different from the grape display in *Corbin.* CMH's first counter to this contention is that there is no evidence that the unit on which Daenen was injured was the same as the units that had become unstable in the past. Therefore, CMH argues, there is no evidence that it had actual or constructive knowledge that the unit on which Daenen was injured would inevitably become unstable.

Witnesses testified that the units CMH previously replaced when they became dangerous were "wooden ones." We need not decide whether a reasonable inference could be drawn from this testimony that the units CMH used in the past were of the same type as the unit on which Daenen was injured. Our analysis does not turn on whether the prior step and platform units were made of the same materials as those involved in Daenen's injury. Accordingly, we will assume for the purposes of this opinion that until Daenen's injury, CMH had used a platform and steps like those on which Daenen hurt his back.

We thus assume that CMH had actual knowledge that the step and platform unit would become unstable and would present

an unreasonable risk of injury after twelve to fifteen months simply by virtue of its use. Further, it is undisputed that CMH knew the unit could immediately become unstable if hit and damaged by a truck, which could happen the day it was installed. The first question we must decide is whether there is some evidence that the unit was unreasonably dangerous because of these propensities.

Contrary to Daenen's contentions, the facts of this case are not congruent with those in *Corbin*. The grape display in *Corbin* allowed grapes to fall on the floor throughout each day and had no mat to protect customers from slipping. *See Corbin*, 648 S.W.2d at 294. The display constituted a dangerous condition from the moment it was used. That is not true of the step and platform unit on which Daenen was injured. Units like it had been safely used for periods of twelve to fifteen months. The issue, then, is what are the legal consequences if premises will become unsafe over time and the owner or occupier is aware of that fact.

The duty owed by an owner or occupier of premises to an invitee is not that of an insurer. *See Wal–Mart*, 968 S.W.2d at 936 (citing *McElhenny v. Thielepape*, 155 Tex. 319, 285 S.W.2d 940, 941 (1956)). The duty owed is to exercise reasonable care to protect against danger from a condition on the land that creates an unreasonable risk of harm of which the owner or occupier knew or by the exercise of reasonable care would discover. *See Corbin*, 648 S.W.2d at 295. Because the core of the duty depends on actual or constructive knowledge of a dangerous condition that a reasonable inspection would reveal, *see, e.g., Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex.1970), it follows that an owner or occupier is not liable for deterioration of its premises unless it knew of or by reasonable inspection would have discovered the deterioration.

Many building materials will, over time, deteriorate and require repair or replacement. That does not necessarily mean that the owner or occupier has created a dangerous condition or that the owner has actual or constructive knowledge of a dangerous condition. For example, we know that asphalt roads will develop potholes over time and will require repair. That does not mean that asphalt roads constitute an unreasonable risk of harm from the day they are constructed. There may be situations in which the deterioration of a structure or fixture is so rapid that there is an unreasonable risk of harm from the outset of its construction or installation, but this is not such a case.

There is no evidence that the step and platform unit on which Danean was injured was a dangerous condition from the inception of its use. In the past, units had been sufficiently strong to withstand daily and heavy use. They held up under a constant stream of deliveries of air conditioning units, refrigerators, and other heavy items. It was only at some point in time after installation that the unit could pose an unreasonable risk of harm due to deterioration.

The fact that units occasionally had become unstable when trucks hit them is not evidence that the units were unreasonably dangerous when first installed. An owner's or occupier's knowledge of prior incidents of damage to a premises would bear on the reasonableness of inspections and the reasonableness of the care exercised by the owner or occupier to make the premises safe. But a premises owner or occupier is not strictly liable for defects on its premises. There is no evidence that CMH failed to use reasonable care to determine whether a truck had hit the unit or that reasonable inspection of the unit would have revealed that it had been hit by a truck and had become unstable.

Finally, Daenen argues that the fact that CMH installed a metal unit after

he was injured is some evidence that CMH knew the partially wooden and partially metal unit was unreasonably dangerous from the inception of its use. To our knowledge, no court has ever suggested that if it is possible to construct buildings or fixtures with materials that are impervious to wear and tear, an owner or occupier has a legal duty to do so and is charged with knowledge of an unreasonably dangerous condition if it does not. We reiterate that premises owners are not strictly liable for conditions that result in injury. *See Corbin,* 648 S.W.2d at 295; W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 61 at 426 (5th ed.1984). Evidence that an owner or occupier knew of a safer, feasible alternative design, without more, is not evidence that the owner knew or should have known that a condition on its premises created an unreasonable risk of harm.

We therefore hold that Daenen did not present any evidence that the unit on which he was injured *inherently* presented an unreasonable risk of harm because it would become unstable after prolonged use. We further hold that evidence that similar structures or fixtures had been damaged in the past by discrete acts does not, standing alone, amount to legally sufficient evidence of a condition that poses an unreasonable risk of harm.

### III

■ Daenen would be entitled to recover if he presented evidence that CMH actually knew that the platform and step unit had become unstable or if a reasonable inspection would have revealed that the unit was no longer safe. Daenen argues that CMH at least had constructive knowledge of the condition of the steps because it knew the steps could become unstable. There was evidence that CMH regularly conducted inspections of the unit. This, Daenen says, is also evidence that it knew or had constructive knowledge that the unit could become dangerous. He further points to testimony that CMH had authorized two of its employees to immediately replace the platform and step unit whenever it became unstable.

As we have explained above, knowledge that premises will deteriorate over time does not equate to knowledge of a condition that presents an unreasonable risk of harm. As we also intimated above, however, knowledge that a structure will need replacement or repair after use does have a direct relationship to the reasonableness of the care exercised by the owner or occupier. Such knowledge also has a bearing on the need for inspection. But in this case, there was no evidence or even contention that CMH had failed to inspect as frequently as it reasonably should. Similarly, there is no evidence that the instability in the step and platform unit had existed for a sufficient time that CMH had constructive notice of the unreasonable risk of harm. Finally, there is no evidence that a truck had hit the unit on which Daenen was injured and that CMH would have discovered damage caused by such a blow in a reasonable inspection.

■ In considering whether CMH had constructive knowledge, the court of appeals held that the temporal element in premises cases should be limited to "slip and fall" incidents. 971 S.W.2d at 189. The court of appeals recognized that this Court has held in premises cases that if there is no actual knowledge of the condition posing an unreasonable risk of harm, constructive knowledge can be based on the length of time that the condition existed before the injury. *See id.* (citing *Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex.1998)). The court of appeals nevertheless concluded that because it might be impossible for Daenen to show actual or constructive notice that the steps at issue had become unstable, "[i]t becomes unreasonable under the present facts to apply the 'time notice' rule." *Id.* We disapprove of this statement. Constructive knowledge is a substitute in the law for actual knowledge. In premises cases constructive knowledge can be estab-

lished by showing that the condition had existed long enough for the owner or occupier to have discovered it upon reasonable inspection. To impose constructive knowledge when the owner or occupier did not have actual knowledge and would not have discovered the dangerous condition from a reasonable inspection is to dramatically alter premise liability law. This we decline to do.

In sum, the plaintiff in this case failed to meets his burden of proof. There is no evidence that CMH knew or had constructive knowledge that the step and platform unit leading to its supply shed posed an unreasonable risk of harm.

\* \* \* \* \*

For the foregoing reasons, we reverse the judgment of the court of appeals and render judgment that Daenen take nothing.