MEMORANDUM OPINION




No. 04-03-00551-CV



Nancy ALARCON,


Appellant



v.



BED, BATH & BEYOND, INC.,


Appellee



From the 73rd Judicial District Court, Bexar County, Texas


Trial Court No. 2003-CI-07706


Honorable David Peeples, Judge Presiding (1)



Opinion by: Sarah B. Duncan, Justice


Sitting: Catherine Stone, Justice

 Sarah B. Duncan, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: June 30, 2004


AFFIRMED

 Nancy Alarcon appeals the take-nothing judgment in her premises liability suit against Bed,
Bath & Beyond. We affirm the trial court's judgment.

 

 1. Bed, Bath & Beyond moved for summary judgment on the ground that it was not
liable under a premises liability theory because it is not an owner or occupier of the sidewalk where
Alarcon was attacked. See CHM Homes, Inc. v. Daenen, 15 S.W.3d 97, 99 (Tex. 1999) (reciting
elements of premises liability claim, including owner's or occupier's actual or constructive knowledge
of premises condition). Bed, Bath & Beyond based its argument on sections 13(a) and 1(b) of its
lease agreement with its landlord, Smokestack Partners, Inc. Section 13(a) provides that the
"Landlord hereby undertakes and assumes all duties and responsibilities in regard to ... security and
control of all Common Areas," which are defined as "[a]ll areas which are, from time to time,
available for the joint use and benefit of Tenant and other tenants of the [Alamo Quarry Market]
Shopping Center ... and their respective employees, agents, ... customers and other invitees, including
but not limited to any and all parking areas, parking spaces, ... [and] sidewalks ...." Pursuant to the
plain language of the lease agreement, Bed, Bath & Beyond does not own, occupy, or control the
sidewalk where Alarcon was attacked. See Wilson v. Texas Parks and Wildlife Dep't, 8 S.W.3d 634,
635 (Tex. 1999) ("As a rule, to prevail on a premises liability claim a plaintiff must prove that the
defendant possessed - that is, owned, occupied, or controlled - the premises where injury
occurred."). Alarcon argues, however, that a fact issue is raised by section 13(a) of the lease
agreement, which provides that "[n]otwithstanding Landlord's obligation to provide security for the
Common Areas, Tenant acknowledges that the same is not to be construed as a warranty by Landlord
that no acts of vandalism or other criminal activity will occur, but does obligate Landlord to provide
that level of security services which is similar to the level of security services provided from time to
time by other landlords in the State of Texas which own shopping centers which are comparable in
size and quality to the [Alamo Quarry Market] Shopping Center." Alarcon argues "this language
raises a fact issue," because it notified Bed, Bath & Beyond that "the management company could
not protect against all criminal activity" and that "its customers faced the threat of criminal assault."
Alarcon also draws support for her argument by the lease's failure to state that "individual tenants
may not walk customers to their cars or employ their own security personnel." We again disagree.
When read in its entirety, it is clear that the parties intended that landlord to "undertake[ ] and assume
[] all duties and responsibilities in regard to ... security and control of all Common Areas ...."

 3. Alarcon next argues that the lease agreement supports an inference that Bed, Bath &
Beyond "was an 'occupier' of the premises to some degree," because section 13©) of the lease
agreement obligates Bed, Bath & Beyond to pay its "Pro Rata Share of the reasonable costs .... paid
by Landlord to operate, maintain and repair Common Areas." We again disagree. When read in
conjunction with section 13(a), the payment of "Common Area Charges" does not support an
inference that Bed, Bath & Beyond exercised control over the sidewalk sufficient to confer a duty
upon it to provide security. See, e.g., Wilson, 8 S.W.3d at 635. 

 4. Alarcon next argues that a material issue of fact was raised "as to whether the area
where [she] was attacked was even under the definition of the 'Common Areas' as they are defined
in the [l]ease agreement," because the sidewalk provides a benefit to Bed, Bath & Beyond and its
customers only. We again disagree. Section 1(b) of the lease agreement expressly and unequivocally
defines "Common Areas" to include "any and all ... sidewalks ...."

 5. Finally, Alarcon argues that a fact issue was raised "as to whether Bed, Bath &
Beyond had a right of control over the area where Alarcon was attacked," because the store provides
shopping carts for use by its customers; and, "from time to time, employees will leave the store to
collect these carts." However, Alarcon cites no authority, and we find none, that the ability to take
shopping carts from the store to the parking lot or vice versa diminishes the effect of the express
provision in section 1(b) of the lease defining the sidewalks and parking lots as "common areas." 

 The trial court's judgment is affirmed.



 Sarah B. Duncan, Justice




1. Although the Honorable Andy Mireles is the judge presiding in the 73rd Judicial District Court, Bexar
County, Texas, the Honorable David Peeples, the judge presiding in the 224th Judicial District Court, Bexar County,
Texas, signed the summary judgment; The Honorable Pat Boone, the judge presiding in the 57th Judicial District Court,
Bexar County, Texas, signed the severance order that made the summary judgment final.