COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-297-CV

 

 

LOTTIE
HUNNICUTT                                                             APPELLANT

 

                                                   V.

 

DALLAS/FORT
WORTH                                                           APPELLEE

INTERNATIONAL AIRPORT 

BOARD, A POLITICAL
SUBDIVISION 

OF THE CITY OF DALLAS AND


THE CITY OF FORT WORTH

 

                                              ------------

 

           FROM THE 348TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








The trial court granted summary judgment for
Appellee Dallas/Fort Worth International Airport Board, a Political Subdivision
of the City of Dallas and the City of Fort Worth (ADFW@)
(Appellee claims that it is actually a unit of local government, not a
subdivision) on the premises liability action brought by Appellant Lottie
Hunnicutt.  In two issues, Hunnicutt
argues that she was an invitee while at DFW and that she provided sufficient
evidence of constructive knowledge of a premises defect to create a material
issue of fact.  Because we hold that the
trial court did not err by granting summary judgment, we affirm.

                                        Background
Facts

On November 21, 2004, while at DFW to catch a
flight, Hunnicutt sustained injuries when she lost her balance and fell while
riding an escalator.  In 2006, she
brought this suit against DFW for premises liability, alleging that the
escalator Ajerked,@ causing
her fall.

DFW filed a traditional motion for summary
judgment, alleging that Hunnicutt was a licensee, not an invitee; that the
escalator was not unreasonably dangerous; and that DFW had no actual knowledge
of the allegedly dangerous condition. 
DFW further argued that even if Hunnicutt raised a fact issue on whether
she was an invitee, DFW had no constructive knowledge of the condition.  DFW also filed a no-evidence summary judgment
motion, alleging that there was no evidence that Hunnicutt was an invitee, that
the escalator posed an unreasonable risk of harm, or that DFW had actual or
constructive knowledge of the allegedly dangerous condition.








Hunnicutt filed a response arguing that the
airlines collect a APassenger Facility Charge@ from
airline passengers and remit those fees to DFW, which uses the fees to pay for
certain capital projects.  Accordingly,
Hunnicutt argued, she paid to use the premises, raising a fact issue as to
whether she was an invitee.  She also
argued that her evidence raised a fact issue as to whether DFW knew or should
have known that the escalator had defective rollers and posed an unreasonable
risk of harm.  The trial court granted
summary judgment without specifying the grounds.  Hunnicutt then filed this appeal. 

                                       Standard
of Review








After an adequate time for discovery, the party
without the burden of proof may, without presenting evidence, move for summary
judgment on the ground that there is no evidence to support an essential
element of the nonmovant=s claim or defense.[2]  The trial court must grant the motion unless
the nonmovant produces summary judgment evidence that raises a genuine issue of
material fact.[3]  The nonmovant must specifically identify the
evidence relied upon to raise an issue of fact; the trial court is not required
Ato wade
through a voluminous record to marshal a respondent=s proof.@[4]

When reviewing a no-evidence summary judgment, we
examine the entire record in the light most favorable to the nonmovant,
indulging every reasonable inference and resolving any doubts against the
motion.[5]  If the nonmovant brings forward more than a
scintilla of probative evidence that raises a genuine issue of material fact,
then a no-evidence summary judgment is not proper.[6]

When a party moves for summary judgment under
both rules 166a(c) and 166a(i), we will first review the trial court=s
judgment under the standards of rule 166a(i).[7]  If the appellants failed to produce more than
a scintilla of evidence under that burden, then there is no need to analyze
whether appellee=s summary judgment proof
satisfied the less stringent rule 166a(c) burden.[8]








                                               Analysis








In Hunnicutt=s second
issue, she argues that she produced sufficient evidence showing that DFW had
actual or constructive knowledge of a premises defect to defeat DFW=s
summary judgment motion.  In its
no-evidence motion, DFW argued that it is a unit of local government entitled
to sovereign or governmental immunity unless that immunity has been waived
under the Texas Torts Claims Act (ATTCA@).  Under the TTCA, in a premises defect case, a
governmental unit owes the claimant only the duty that a private person owes to
a licensee, Aunless the claimant pays for the
use of the premises.@[9]  A private property owner is liable to a
licensee for defects on the premises only if the property owner has actual
knowledge of the defects.[10]  If the claimant pays for the use of the
premises, then the claimant is treated as an invitee.[11]  A private property owner is liable to an
invitee for premises defects of which the owner has actual knowledge and for
defects of which the owner has constructive knowledge, that is, defects the
owner would have discovered from a reasonable inspection.[12]

The parties dispute whether Hunnicutt paid to use
the premises and was therefore an invitee. 
But if DFW had no actual or constructive knowledge of the condition that
caused Hunnicutt=s injuries, it is not liable to
her even if she was an invitee.[13]

Knowledge that escalator rollers will need to be
repaired or replaced after use has a direct relationship to the reasonableness
of the care exercised by DFW.[14]  But knowledge that escalator rollers can
deteriorate over time is not knowledge that the rollers are a condition that
presents an unreasonable risk of harm.[15]

Hunnicutt pointed to no evidence in the record
showing or raising a fact issue as to whether DFW actually knew that the
escalator had defective rollers before her fall.  Thus, DFW is liable to her only if it had
constructive knowledge and she was an invitee.








Constructive knowledge has a temporal element; to
show constructive knowledge, a plaintiff must show that the condition had
existed long enough for the owner to have had a reasonable opportunity to
discover it in the exercise of ordinary care.[16]  Although what constitutes a reasonable time
for discovery varies from case to case, Athere
must be some proof of how long the hazard was there before liability can be
imposed on the premises owner for failing to discover and rectify, or warn of,
the dangerous condition.@[17]








In her response to the no-evidence motion,
Hunnicutt pointed to the deposition of Robert Alford, a DFW employee whose job
at the time of Hunnicutt=s accident, included performing
maintenance on DFW=s escalators and the expert
report of Robert Creak, an elevator and escalator consultant, as evidence of
DFW=s
constructive knowledge.  Alford testified
that he replaced some track rollers on the escalator in question on November
22, 2004, the day after Hunnicutt=s
accident; that he believed that broken track rollers could cause a step to be
unstable; and that he did not believe that an escalator would Ajerk@ if
properly maintained.  In no part of the
deposition testimony provided and pointed out by Hunnicutt did Alford testify
about how long the rollers were defective before the accident.  Alford did not testify about any maintenance
performed on the escalator before the accident.

In his expert report, Creak stated that, in his
opinion, the step rollers on the escalator were not being properly maintained
in accordance with industry standards and that, as a result, the three rollers
replaced on November 22 were more probably than not defective when Hunnicutt=s
accident occurred.  He further stated
that it was Apossible@ that
one of the defective rollers was on the step on which Hunnicutt was standing
when she fell.








With respect to the inspection methods used by
DFW, Creak stated that the two methods of inspection used by the maintenance
crew were deficient.  Under one method,
the crew would check the steps by looking at the steps from the lower pit while
the steps were moving, which Creak stated would give the technician Aless
than one second@ to observe a step and its trail
rollers pass by his line of vision.  With
the second method, the crew would ride each step to test for movement on the
step, which Creak stated would Anot
guarantee that a defective roller would be in the right position to be detected
at the exact time that the step [was] being checked.@  Instead, Creak stated, a Amuch more
effective and thorough method@ would
be to remove each step from the step band. 
Creak asserted that nothing in the records of the service history
provided to him or in deposition testimony of a DFW technician, also provided
to him, indicated that this was done. 
Creak stated that Aindustry standard and practice
for escalator maintenance provides for an annual clean down and inspection that
includes removal and a condition check of all step bodies and their rollers.@

Absent from Creak=s report
are any statements about how long a roller typically lasts or what additional
inspection methods might constitute reasonable inspections between the annual
industry-standard inspections. 
Accordingly, even considering Creak=s
report, an escalator could be properly inspected on January 1 of a year, but if
rollers became defective at any time during the year after that inspection,
even following industry standards, this defective state would not be discovered
by an inspector until the following yearly inspection.

Hunnicutt contends that if DFW had reasonably
inspected the escalator by inspecting the escalator in accordance with industry
standards, the defective rollers should have been discovered.  The problem with this statement is that
without evidence of when the rollers became defective, no one can say whether
DFW could have discovered the problem and remedied it prior to her
accident.  In other words, stating that
DFW could have discovered the problem by inspecting the escalator in a manner
other than it did presumes that the problem existed and was discoverable when
the inspection occurred.








There is no evidence of when the problem
developed.  And accordingly, even if DFW
had inspected the escalator in the manner suggested by Creak at its last
inspection of the escalator, if the problem had not yet developed, DFW could
not have discovered it and fixed it.  If
there is no evidence that DFW had a reasonable opportunity to discover and fix
the problem, there is no evidence that DFW had constructive knowledge that the
problem existed.[18]

In her reply brief, Hunnicutt asserts that length
of time is only one manner in which constructive knowledge can be established
and points to Keetch v. Kroger Co.[19]
for the proposition that a property owner can have constructive knowledge of a
dangerous condition if the property owner created the condition.  The supreme court in Keetch stated
that an owner=s creation of a dangerous
condition is circumstantial evidence of knowledge of the condition, but Athe jury
still must find that the owner or occupier knew or should have known of the
condition.@[20]








The supreme court has held that a plaintiff may
recover by showing that the defendant either Aactually
knew@ of the
dangerous condition or Aif a reasonable inspection would
have revealed that the unit was no longer safe.@[21]  But the court has not held that failure to
inspect demonstrates that the property owner created the condition.[22]








The dangerous condition alleged in this case was
the defective rollers, not the escalator itself.  There is no evidence that DFW placed
defective rollers in the escalator or that DFW otherwise created the
condition.  Rather, the claim is that the
rollers deteriorated or somehow became defective and that DFW should have
discovered their condition.  An owner is
not liable for deterioration unless it actually knew or by reasonable
inspection would have discovered the deterioration.[23]  Here, the report stating that DFW failed to
reasonably inspect does not help Hunnicutt because (1) according to Creak, a
reasonable investigation occurs once a year, (2) there is no evidence as to
when the rollers became defective, and therefore, (3) there is no evidence that
conducting such an inspection would have allowed DFW to discover the problem
and remedy it.  Even if Creak had stated
that reasonable inspection means taking the steps off of the elevator every day
(which he did not), to defeat summary judgment, there must still have been some
evidence that the rollers became defective at such a time that the condition
would have been discoverable upon proper inspection.

Because there is no evidence that DFW had
constructive knowledge of the defective rollers, we hold that the trial court
did not err by granting summary judgment for DFW.  Accordingly, we overrule Hunnicutt=s second
issue and do not reach her first issue.[24]

                                             Conclusion

Having overruled Hunnicutt=s second
issue, which is dispositive, we affirm the trial court=s
judgment.

 

 

LEE
ANN DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

 

DELIVERED: July 30, 2009











[1]See Tex. R. App. P. 47.4.





[2]Tex. R. Civ. P. 166a(i).





[3]See Tex. R. Civ. P. 166a(i)
& cmt.; Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex.
2002).





[4]See DeGrate v. Executive
Imprints, Inc., 261 S.W.3d 402, 408 (Tex. App.CTyler 2008, no pet.); see also Arredondo v.
Rodriguez, 198 S.W.3d 236, 238 (Tex. App.CSan Antonio 2006, no
pet.); Tex. R. Civ. P. 166a(i) & cmt. (ATo defeat a motion made under paragraph (i), ...
[a nonmovant=s] response need only
point out evidence that raises a fact issue on the challenged elements.@).





[5]Sudan v. Sudan, 199 S.W.3d 291, 292
(Tex. 2006).





[6]Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex.
App.CSan Antonio 1998, pet.
denied).





[7]Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600
(Tex. 2004).





[8]Id.





[9]Tex. Civ. Prac. &
Rem. Code Ann. ' 101.022(a) (Vernon 2005
& Supp. 2008).





[10]City of Dallas v.
Thompson,
210 S.W.3d 601, 602B03 (Tex. 2006); State
Dep=t of Highways & Pub.
Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992).





[11]Tex. Parks & Wildlife
Dep=t v. Davis, 988 S.W.2d 370, 374
(Tex. App.CAustin 1999, no pet.); M.D.
Anderson Hosp. & Tumor Inst. v. Felter, 837 S.W.2d 245, 247 (Tex. App.CHouston [1st Dist.] 1992,
no writ).





[12]CMH Homes, Inc. v. Daenen, 15 S.W.3d 97, 102B03 (Tex. 2000); Wal‑Mart
Stores, Inc. v. Reece, 81 S.W.3d 812, 813 (Tex. 2002).





[13]See CMH Homes, 15 S.W.3d at 102B03.





[14]See id. at 102.





[15]See id.





[16]See Reece, 81 S.W.3d at 814; Wal‑Mart
Stores, Inc. v. Diaz, 109 S.W.3d 584, 589 (Tex. App.CFort Worth 2003, no
pet.); see also CMH Homes, 15 S.W.3d at 102 (declining to limit the
temporal element of premises liability to slip‑and‑fall cases).





[17]Reece, 81 S.W.3d at 816.





[18]See Reece, 81 S.W.3d at 816.





[19]845 S.W.2d 262, 265 (Tex.
1992).





[20]Id. at 265.





[21]See CMH Homes, 15 S.W.3d at 102.





[22]Id. (holding there was no evidence
that property owner failed to inspect as often as it reasonably should have and
no evidence that dangerous condition had existed for a sufficient time that
property owner had constructive notice of the condition); Fort Brown Villas
III Condo. Assoc, Inc. v. Gillenwater, No. 07-1028, 2009 WL 1028047, at *4
(Tex. Apr. 17, 2009) (holding there was no evidence that property owner
actually knew of the dangerous condition of a lounge chair, that it had failed
to reasonably inspect the chair, or that the dangerous condition on the chair
existed for any length of time prior to the accident).





[23]CMH Homes, 15 S.W.3d at 101B03.





[24]See Ford Motor Co.,
135 S.W.3d at 600.