

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-297-CV**

LOTTIE HUNNICUTT                                                              APPELLANT

V.

DALLAS/FORT WORTH                                                            APPELLEE
INTERNATIONAL AIRPORT
BOARD, A POLITICAL SUBDIVISION
OF THE CITY OF DALLAS AND
THE CITY OF FORT WORTH

------------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

The trial court granted summary judgment for Appellee Dallas/Fort Worth

International Airport Board, a Political Subdivision of the City of Dallas and the

City of Fort Worth ("DFW") (Appellee claims that it is actually a unit of local

---

[1] *See* Tex. R. App. P. 47.4.

government, not a subdivision) on the premises liability action brought by Appellant Lottie Hunnicutt. In two issues, Hunnicutt argues that she was an invitee while at DFW and that she provided sufficient evidence of constructive knowledge of a premises defect to create a material issue of fact. Because we hold that the trial court did not err by granting summary judgment, we affirm.

## Background Facts

On November 21, 2004, while at DFW to catch a flight, Hunnicutt sustained injuries when she lost her balance and fell while riding an escalator. In 2006, she brought this suit against DFW for premises liability, alleging that the escalator "jerked," causing her fall.

DFW filed a traditional motion for summary judgment, alleging that Hunnicutt was a licensee, not an invitee; that the escalator was not unreasonably dangerous; and that DFW had no actual knowledge of the allegedly dangerous condition. DFW further argued that even if Hunnicutt raised a fact issue on whether she was an invitee, DFW had no constructive knowledge of the condition. DFW also filed a no-evidence summary judgment motion, alleging that there was no evidence that Hunnicutt was an invitee, that the escalator posed an unreasonable risk of harm, or that DFW had actual or constructive knowledge of the allegedly dangerous condition.

2

Hunnicutt filed a response arguing that the airlines collect a "Passenger Facility Charge" from airline passengers and remit those fees to DFW, which uses the fees to pay for certain capital projects. Accordingly, Hunnicutt argued, she paid to use the premises, raising a fact issue as to whether she was an invitee. She also argued that her evidence raised a fact issue as to whether DFW knew or should have known that the escalator had defective rollers and posed an unreasonable risk of harm. The trial court granted summary judgment without specifying the grounds. Hunnicutt then filed this appeal.

## Standard of Review

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.[2] The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.[3] The nonmovant must specifically identify the evidence

---

[2] Tex. R. Civ. P. 166a(i).

[3] *See* Tex. R. Civ. P. 166a(i) & cmt.; *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

3

relied upon to raise an issue of fact; the trial court is not required "to wade through a voluminous record to marshal a respondent's proof."[4]

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.[5] If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.[6]

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i).[7] If the appellants failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether appellee's summary judgment proof satisfied the less stringent rule 166a(c) burden.[8]

---

[4] *See DeGrate v. Executive Imprints, Inc.*, 261 S.W.3d 402, 408 (Tex. App.—Tyler 2008, no pet.); *see also Arredondo v. Rodriguez*, 198 S.W.3d 236, 238 (Tex. App.—San Antonio 2006, no pet.); Tex. R. Civ. P. 166a(i) & cmt. ("To defeat a motion made under paragraph (i), ... [a nonmovant's] response need only point out evidence that raises a fact issue on the challenged elements.").

[5] *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006).

[6] *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

[7] *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

[8] *Id.*

**Analysis**

In Hunnicutt's second issue, she argues that she produced sufficient evidence showing that DFW had actual or constructive knowledge of a premises defect to defeat DFW's summary judgment motion. In its no-evidence motion, DFW argued that it is a unit of local government entitled to sovereign or governmental immunity unless that immunity has been waived under the Texas Torts Claims Act ("TTCA"). Under the TTCA, in a premises defect case, a governmental unit owes the claimant only the duty that a private person owes to a licensee, "unless the claimant pays for the use of the premises."[9] A private property owner is liable to a licensee for defects on the premises only if the property owner has actual knowledge of the defects.[10] If the claimant pays for the use of the premises, then the claimant is treated as an invitee.[11] A private property owner is liable to an invitee for premises defects of which the owner has actual knowledge and for defects of which the owner has

---

[9] Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a) (Vernon 2005 & Supp. 2008).

[10] *City of Dallas v. Thompson*, 210 S.W.3d 601, 602–03 (Tex. 2006); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992).

[11] *Tex. Parks & Wildlife Dep't v. Davis*, 988 S.W.2d 370, 374 (Tex. App.—Austin 1999, no pet.); *M.D. Anderson Hosp. & Tumor Inst. v. Felter*, 837 S.W.2d 245, 247 (Tex. App.—Houston [1st Dist.] 1992, no writ).

5

constructive knowledge, that is, defects the owner would have discovered from a reasonable inspection.[12]

The parties dispute whether Hunnicutt paid to use the premises and was therefore an invitee. But if DFW had no actual or constructive knowledge of the condition that caused Hunnicutt's injuries, it is not liable to her even if she was an invitee.[13]

Knowledge that escalator rollers will need to be repaired or replaced after use has a direct relationship to the reasonableness of the care exercised by DFW.[14] But knowledge that escalator rollers can deteriorate over time is not knowledge that the rollers are a condition that presents an unreasonable risk of harm.[15]

Hunnicutt pointed to no evidence in the record showing or raising a fact issue as to whether DFW actually knew that the escalator had defective rollers before her fall. Thus, DFW is liable to her only if it had constructive knowledge and she was an invitee.

---

[12] *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102–03 (Tex. 2000); *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 813 (Tex. 2002).

[13] *See CMH Homes*, 15 S.W.3d at 102–03.

[14] *See id.* at 102.

[15] *See id.*

Constructive knowledge has a temporal element; to show constructive knowledge, a plaintiff must show that the condition had existed long enough for the owner to have had a reasonable opportunity to discover it in the exercise of ordinary care.[16] Although what constitutes a reasonable time for discovery varies from case to case, "there must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition."[17]

In her response to the no-evidence motion, Hunnicutt pointed to the deposition of Robert Alford, a DFW employee whose job at the time of Hunnicutt's accident, included performing maintenance on DFW's escalators and the expert report of Robert Creak, an elevator and escalator consultant, as evidence of DFW's constructive knowledge. Alford testified that he replaced some track rollers on the escalator in question on November 22, 2004, the day after Hunnicutt's accident; that he believed that broken track rollers could cause a step to be unstable; and that he did not believe that an escalator would "jerk" if properly maintained. In no part of the deposition testimony provided and

---

[16] *See Reece*, 81 S.W.3d at 814; *Wal-Mart Stores, Inc. v. Diaz*, 109 S.W.3d 584, 589 (Tex. App.—Fort Worth 2003, no pet.); *see also CMH Homes*, 15 S.W.3d at 102 (declining to limit the temporal element of premises liability to slip-and-fall cases).

[17] *Reece*, 81 S.W.3d at 816.

7

pointed out by Hunnicutt did Alford testify about how long the rollers were defective before the accident. Alford did not testify about any maintenance performed on the escalator before the accident.

In his expert report, Creak stated that, in his opinion, the step rollers on the escalator were not being properly maintained in accordance with industry standards and that, as a result, the three rollers replaced on November 22 were more probably than not defective when Hunnicutt's accident occurred. He further stated that it was "possible" that one of the defective rollers was on the step on which Hunnicutt was standing when she fell.

With respect to the inspection methods used by DFW, Creak stated that the two methods of inspection used by the maintenance crew were deficient. Under one method, the crew would check the steps by looking at the steps from the lower pit while the steps were moving, which Creak stated would give the technician "less than one second" to observe a step and its trail rollers pass by his line of vision. With the second method, the crew would ride each step to test for movement on the step, which Creak stated would "not guarantee that a defective roller would be in the right position to be detected at the exact time that the step [was] being checked." Instead, Creak stated, a "much more effective and thorough method" would be to remove each step from the step band. Creak asserted that nothing in the records of the service history provided

8

to him or in deposition testimony of a DFW technician, also provided to him, indicated that this was done. Creak stated that "industry standard and practice for escalator maintenance provides for an annual clean down and inspection that includes removal and a condition check of all step bodies and their rollers."

Absent from Creak's report are any statements about how long a roller typically lasts or what additional inspection methods might constitute reasonable inspections between the annual industry-standard inspections. Accordingly, even considering Creak's report, an escalator could be properly inspected on January 1 of a year, but if rollers became defective at any time during the year after that inspection, even following industry standards, this defective state would not be discovered by an inspector until the following yearly inspection.

Hunnicutt contends that if DFW had reasonably inspected the escalator by inspecting the escalator in accordance with industry standards, the defective rollers should have been discovered. The problem with this statement is that without evidence of when the rollers became defective, no one can say whether DFW could have discovered the problem and remedied it prior to her accident. In other words, stating that DFW could have discovered the problem by inspecting the escalator in a manner other than it did presumes that the problem existed and was discoverable when the inspection occurred.

9

There is no evidence of when the problem developed. And accordingly, even if DFW had inspected the escalator in the manner suggested by Creak at its last inspection of the escalator, if the problem had not yet developed, DFW could not have discovered it and fixed it. If there is no evidence that DFW had a reasonable opportunity to discover and fix the problem, there is no evidence that DFW had constructive knowledge that the problem existed.[18]

In her reply brief, Hunnicutt asserts that length of time is only one manner in which constructive knowledge can be established and points to *Keetch v. Kroger Co.*[19] for the proposition that a property owner can have constructive knowledge of a dangerous condition if the property owner created the condition. The supreme court in *Keetch* stated that an owner's creation of a dangerous condition is circumstantial evidence of knowledge of the condition, but "the jury still must find that the owner or occupier knew or should have known of the condition."[20]

The supreme court has held that a plaintiff may recover by showing that the defendant either "actually knew" of the dangerous condition or "if a

---

[18] *See Reece*, 81 S.W.3d at 816.

[19] 845 S.W.2d 262, 265 (Tex. 1992).

[20] *Id.* at 265.

10

reasonable inspection would have revealed that the unit was no longer safe."[21] But the court has not held that failure to inspect demonstrates that the property owner *created* the condition.[22]

The dangerous condition alleged in this case was the defective rollers, not the escalator itself. There is no evidence that DFW placed defective rollers in the escalator or that DFW otherwise created the condition. Rather, the claim is that the rollers deteriorated or somehow became defective and that DFW should have discovered their condition. An owner is not liable for deterioration unless it actually knew or by reasonable inspection would have discovered the deterioration.[23] Here, the report stating that DFW failed to reasonably inspect does not help Hunnicutt because (1) according to Creak, a reasonable investigation occurs once a year, (2) there is no evidence as to when the rollers became defective, and therefore, (3) there is no evidence that conducting such

---

[21] *See CMH Homes*, 15 S.W.3d at 102.

[22] *Id.* (holding there was no evidence that property owner failed to inspect as often as it reasonably should have and no evidence that dangerous condition had existed for a sufficient time that property owner had constructive notice of the condition); *Fort Brown Villas III Condo. Assoc, Inc. v. Gillenwater*, No. 07-1028, 2009 WL 1028047, at *4 (Tex. Apr. 17, 2009) (holding there was no evidence that property owner actually knew of the dangerous condition of a lounge chair, that it had failed to reasonably inspect the chair, or that the dangerous condition on the chair existed for any length of time prior to the accident).

[23] *CMH Homes*, 15 S.W.3d at 101–03.

an inspection would have allowed DFW to discover the problem and remedy it. Even if Creak had stated that reasonable inspection means taking the steps off of the elevator every day (which he did not), to defeat summary judgment, there must still have been some evidence that the rollers became defective at such a time that the condition would have been discoverable upon proper inspection.

Because there is no evidence that DFW had constructive knowledge of the defective rollers, we hold that the trial court did not err by granting summary judgment for DFW. Accordingly, we overrule Hunnicutt's second issue and do not reach her first issue.[24]

### Conclusion

Having overruled Hunnicutt's second issue, which is dispositive, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

DELIVERED: July 30, 2009

---

[24] *See Ford Motor Co.*, 135 S.W.3d at 600.

12