

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00125-CV

**PAY AND SAVE, INC.**,
Appellant

v.

Roel **CANALES**,
Appellee

From the 229th Judicial District Court, Duval County, Texas
Trial Court No. DC-16-371
Honorable Baldemar Garza, Judge Presiding

### OPINION ON APPELLEE'S MOTION FOR REHEARING

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: September 14, 2022

REVERSED; RENDERED IN PART AND REMANDED

On July 27, 2022, we issued our opinion and judgment. Subsequently, Appellee timely filed a motion for rehearing. We deny Appellee's motion, but we withdraw our July 27, 2022 opinion and judgment and substitute this opinion and judgment to clarify portions of our analysis.

In this premises liability case, Appellant Pay and Save, Inc. appeals from a multi-million-dollar judgment in favor of Appellee Roel Canales for compensatory and punitive damages. Pay

and Save raises three issues: it challenges the sufficiency of the evidence supporting the jury's findings on negligence, gross negligence, and damages.

Having reviewed the evidence, we reverse the trial court's judgment. Because the evidence of gross negligence was legally insufficient, we render judgment that Canales take nothing on that claim. Because the evidence was legally but not factually sufficient to support the jury's findings on Canales's premises liability claim, we remand the cause for a new trial on liability and damages.

### APPELLATE JURISDICTION

Before we turn to Pay and Save's issues, we address Canales's assertion that this court lacks jurisdiction to hear this appeal because Pay and Save did not timely file its notice of appeal.

### A. Procedural Background

On October 1, 2019, the trial court signed a final judgment, which incorrectly stated the amount of compensatory damages.

On October 24, 2019, Pay and Save filed a motion to retax costs. On October 30, 2019, Pay and Save filed a motion to modify the judgment. And on October 31, 2019, Pay and Save filed a second motion for JNOV, and a motion for new trial.

On November 25, 2019, the trial court denied all four motions. Nevertheless, on December 3, 2019, the trial court signed an amended judgment that corrected the amount awarded for compensatory damages.

On December 30, 2019, Pay and Save filed a second motion for new trial, and on February 25, 2020, Pay and Save filed a notice of appeal.

### B. Parties' Arguments

Canales contends that Pay and Save's motion to modify the judgment and its first motion for new trial had already been overruled when Pay and Save filed its second motion for new trial. Therefore, the second motion for new trial was not timely, and it did not extend the appellate

timetable. Thus, Pay and Save's February 25, 2020 notice of appeal was untimely, and we lack appellate jurisdiction.

Pay and Save argues that the trial court's December 3, 2019 amended judgment was signed while the trial court retained plenary power, and the amended judgment restarted the appellate timetable. Thus, Pay and Save's second motion for new trial extended the deadline to file a notice of appeal to March 2, 2020, its February 25, 2020 notice of appeal was timely, and this court has appellate jurisdiction.

We agree with Pay and Save.

**C.     Discussion**

Given the trial court signed its final judgment on October 1, 2019, a motion for new trial or a motion to modify the judgment was due within 30 days—by October 31, 2019. *See* TEX. R. CIV. P. 329b(a) (motion for new trial); *id.* R. 329b(g) (motion to modify judgment); *Ryland Enter., Inc. v. Weatherspoon*, 355 S.W.3d 664, 665 (Tex. 2011) (per curiam). Thus, Pay and Save's motion to modify and its motion for new trial, filed on or before October 31, 2019, each extended the trial court's plenary power "until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first." TEX. R. CIV. P. 329b(e); *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 69 (Tex. 2008) (orig. proceeding).

The trial court denied the pending motions, including the motion for new trial and the motion to modify the judgment, on November 25, 2019, and its plenary power was due to expire on December 27, 2019. *See* TEX. R. CIV. P. 329b(e), (g); *In re Brookshire Grocery Co.*, 250 S.W.3d at 69. But when the trial court corrected the amount of compensatory damages and signed its amended judgment on December 3, 2019, it did so within its plenary power period, and the corrected judgment restarted the appellate timetable. *See Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 313 (Tex. 2000) ("Rule 329b(h) provides that '[i]f a judgment is modified,

corrected or reformed *in any respect*' the appellate timetable runs from the date of the new judgment." (alteration in original) (quoting TEX. R. CIV. P. 329b(h))).

Thus, Pay and Save's second motion for new trial, which assailed the amended judgment and was filed on December 30, 2019, was timely, *see* TEX. R. CIV. P. 329b(a), (h); *Lane Bank*, 10 S.W.3d at 313, and it extended the due date for a notice of appeal to March 2, 2020, *see* TEX. R. APP. P. 26.1(a); *Ryland Enter.*, 355 S.W.3d at 665.

Therefore, Pay and Save's February 25, 2020 notice of appeal was timely, and it invoked our appellate jurisdiction. *See* TEX. R. APP. P. 25.1(b); *Kenneth D. Eichner, P.C. v. Dominguez*, 623 S.W.3d 358, 361 (Tex. 2021) (per curiam).

We overrule Canales's assertion that we lack jurisdiction. We now turn to Pay and Save's evidentiary issues.

## BACKGROUND

In this premises liability case, Roel Canales was injured while he was grocery shopping when he got his foot stuck in a wooden pallet that was supporting a bin of watermelons. He fell, he was injured, and he sued the grocery store owner, Pay and Save.

### A. Pay and Save

Pay and Save is a family-owned grocery store chain that owns about 150 stores in Texas, New Mexico, Colorado, Arizona, and Kansas. In 2011, Pay and Save bought a company that owned and operated about fifty Super S Stores in South Texas.

### B. The Watermelon Displays

In May 2016, Canales entered the Pay and Save store in Freer, Texas to buy a watermelon. The watermelons were displayed in three large cardboard bins lined up next to each other. Each bin sat on top of a separate wooden pallet.



### 1. The Bins

The cardboard bins were octagonal in shape. The two bins at the ends of the three-bin lineup had triangular cardboard flaps to cover the tops of the exposed corners of the pallets. The corners of the bins where the flaps were located had large red and white arrows pointing down to the flaps.

### 2. The Pallets

The wooden pallets were approximately four feet square, and each had a top and bottom deck made of horizontal wooden slats. The two decks were connected by vertical boards on two sides and the center. The space between the top and bottom decks was about four inches, and the pallets were open on two opposite sides. The other two sides were covered with wooden slats.

The pallets' side openings were wider than a human foot; they were designed to receive forklift prongs for moving the bins. There were no signs on the pallets warning about the pallets' side openings.

## C.      The Accident

On the day of the accident, Canales was wearing steel-toed work boots. He entered the store looking for a good-sized watermelon, and he walked directly to one of the three bins. Canales said he did not see the arrows pointing to the exposed corners of the pallets nor the pallets underneath the bins. When he approached the side of a bin, without knowing he was doing so, he put his right foot into the pallet's side opening. After selecting and picking up a watermelon, Canales turned away from the bin towards the register to pay for the watermelon. As he turned away, the toe of his right boot got stuck inside the pallet's opening, which caused him to lose his balance and fall to the ground. When he hit the floor, he heard his elbow crack. It was not until he fell that he saw the pallets underneath the bins.

Canales reported his fall and his injuries to the cashier. He gave his driver's license information to a store employee, and he left the store. A company employee filled out an incident report, which included Canales's statement that he tripped on a pallet. Later that day, Canales's wife drove him to the hospital for treatment.

## D.      The Lawsuit

In December 2016, Canales sued Pay and Save for negligence, under a premises liability theory, and gross negligence. At trial, the only liability question presented to the jury was on premises liability.

The jury found that Pay and Save "knew or reasonably should have known of the danger," Canales and Pay and Save were both negligent, and Canales was 30% responsible and Pay and Save was 70% responsible. The jury awarded Canales compensatory and exemplary damages.

Pay and Save appeals; it challenges the sufficiency of the evidence supporting the jury's findings on negligence, gross negligence, and damages.

We begin by reciting the standards of review and the applicable law.

**PREMISES LIABILITY**

**A.     Standards of Review**

*1.      Legal Sufficiency*

The standard for legal sufficiency is well known:

> Evidence is legally insufficient to support a jury finding when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.

*Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 613 (Tex. 2016); *accord City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). "When determining whether legally sufficient evidence supports a finding, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not." *Crosstex*, 505 S.W.3d at 613; *accord City of Keller*, 168 S.W.3d at 827.

"[A]ll of the record evidence must be considered in a light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in that party's favor." *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)).

"More than a scintilla exists when the evidence would enable reasonable and fair-minded people to reach different conclusions." *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)).

*2.    Factual Sufficiency*

The standard for factual sufficiency is also well known:

> When reviewing an assertion that the evidence is factually insufficient to support a finding, a court of appeals sets aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, it determines that the credible evidence supporting the finding is so weak, or is so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered.

*Crosstex*, 505 S.W.3d at 615 (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)).

"When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict." *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *accord Gonzalez v. Wal-Mart Stores, Inc.*, 143 S.W.3d 118, 122 (Tex. App.—San Antonio 2004, no pet.).  We "may not pass [judgment] upon the witnesses' credibility or [otherwise] substitute [our] judgment for that of the jury, even if the evidence would clearly support a different result." *Ellis*, 971 S.W.2d at 411.

However, as we view the evidence in a neutral light and defer to the jury's weight and credibility determinations, if we conclude the evidence "the jury *could not reasonably have credited* in favor of the finding was so significant that the jury could not have found [as it did]," the evidence is factually insufficient.  *See In re Commitment of Stoddard*, 619 S.W.3d 665, 677 (Tex. 2020) (discussing factual sufficiency in a case with an elevated burden of proof); *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (same).

Having set forth the evidentiary standards of review applicable in this case, we address Pay and Save's evidentiary issues.

**B.    Parties' Arguments**

Pay and Save argues, inter alia, that there was neither legally nor factually sufficient evidence to support the elements of premises liability because the contrary evidence established that (a) many customers had walked by or picked up watermelons from the display for years without any complaint or injury; (b) Pay and Save had no knowledge of anyone ever sustaining an injury from a wooden pallet in the manner in which Canales alleges he was injured; and (c) displaying watermelons on open-sided wooden pallets in grocery stores in South Texas as Pay and Save did was the industry standard.

Canales contends there was substantial and overwhelming evidence of Pay and Save's negligence and proximate cause regarding the pallet, and consequently, Pay and Save failed to demonstrate that the jury's premises liability findings should be reversed.

**C.    Premises Liability Elements**

In a premises liability case, the plaintiff has the burden to establish that the defendant owed him a duty, the defendant breached that duty, and the plaintiff's damages were proximately caused by the defendant's breach. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010). "[T]he scope of the defendant's duty turns on the plaintiff's status." *Id.*; *see also Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996) (per curiam). A plaintiff who enters the defendant's property with the defendant's knowledge and for the plaintiff's and defendant's mutual benefit is an invitee. *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 202 (Tex. 2015) (citing *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex. 1975)). An injured invitee who seeks to recover damages "must establish that the premises owner knew or should have known of a dangerous condition on the premises that presented an unreasonable risk of harm and that the condition proximately caused the plaintiff's injuries." *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 162 (Tex. 2007) (per curiam); *accord CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000).

**D.      Premises Owner's Requisite Knowledge**

For the defendant to be liable, the plaintiff must prove, inter alia, that the defendant had actual or constructive knowledge that the condition that proximately caused the injury presented an unreasonable risk of harm. *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 514 (Tex. 2008) (per curiam) (rejecting a premises liability claim because "there [was] no evidence of the [defendant's] actual knowledge that the [condition] presented an unreasonable risk of harm"); *Brinson Ford*, 228 S.W.3d at 162 (requiring the premises owner's knowledge "of a dangerous condition on the premises that presented an unreasonable risk of harm"); *CMH Homes*, 15 S.W.3d at 101.

"A condition presenting an unreasonable risk of harm is defined as one in which there is a *sufficient probability* of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as *likely* to happen." *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970) (emphasis added); *accord United Supermarkets, LLC v. McIntire*, 646 S.W.3d 800, 803 (Tex. 2022); *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002). "[T]estimony that a condition *could* injure an invitee is not evidence that it poses an *unreasonable* risk of harm." *McIntire*, 646 S.W.3d at 804.

Further, "a condition is not unreasonably dangerous simply because it is not foolproof." *Brinson Ford*, 228 S.W.3d at 163; *accord McIntire*, 646 S.W.3d at 804.

Moreover, "[e]vidence that an owner or occupier knew of a safer, feasible alternative design, without more, is not evidence that the owner knew or should have known that a condition on its premises created an unreasonable risk of harm." *City of Dallas v. Thompson*, 210 S.W.3d 601, 604 (Tex. 2006) (alteration in original) (quoting *CMH Homes*, 15 S.W.3d at 102).

**E.      Time-Notice Rule Inapt**

In cases where a dangerous condition may develop over time, constructive knowledge may be a legal substitute for actual knowledge. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 815 (Tex. 2002); *CMH Homes*, 15 S.W.3d at 102–03.

"In premises cases constructive knowledge can be established by showing that the condition had existed long enough for the owner or occupier to have discovered it upon reasonable inspection." *CMH Homes*, 15 S.W.3d at 102–03; *accord Reece*, 81 S.W.3d at 815. "The so-called 'time-notice rule' is based on the premise that temporal evidence best indicates whether the owner had a reasonable opportunity to discover and remedy a dangerous condition." *Reece*, 81 S.W.3d at 816; *accord Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 409 (Tex. 2006).

Situations where a condition exists long enough to give an owner a reasonable opportunity to discover a temporary or changed condition such as "a piece of partially melted ice on a tile floor," *Brookshire Grocery*, 222 S.W.3d at 407, "a puddle of clear liquid," *Reece*, 81 S.W.3d at 813, or stair "steps [that] had become unstable," *CMH Homes*, 15 S.W.3d at 98, may suffice for actual knowledge.

But in this case, it is undisputed that Pay and Save knew its watermelon bin displays were placed on pallets with side openings at the time they put them on the floor; there was no need for time to pass for Pay and Save to exercise reasonable care to discover the pallet's open-sided condition. *Cf. Reece*, 81 S.W.3d at 816; *CMH Homes*, 15 S.W.3d at 101.

Further, there is no evidence that the pallets' risk of harm changed from the time they were placed on the floor until the time of Canales's accident. *Cf. Reece*, 81 S.W.3d at 816; *CMH Homes*, 15 S.W.3d at 101.

Therefore, under these facts, the time-notice rule is not applicable; we turn to the requirements for proving Pay and Save's knowledge.

**F.      Proving Actual Knowledge**

"Although there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm, courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Aguilar*, 251 S.W.3d at 513 (citing *Brinson Ford*, 228 S.W.3d at 163). Besides reports of prior injuries or dangers, direct or circumstantial evidence may also show actual knowledge, but "[c]ircumstantial evidence establishes actual knowledge only when it 'either directly or by reasonable inference' supports that conclusion." *City of Corsicana v. Stewart*, 249 S.W.3d 412, 415 (Tex. 2008) (per curiam) (quoting *State ex rel. State Dep't of Hwys. & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 330 (Tex. 2002)).

**G.      What Unreasonably Dangerous Condition?**

Canales's burden was to prove Pay and Save knew or should have known that the condition that caused his injury was unreasonably dangerous, and our analysis must identify the specific condition. *See Aguilar*, 251 S.W.3d at 513 (considering "prior injuries or reports of the potential danger presented by the condition"); *Brinson Ford*, 228 S.W.3d at 162–63. As Canales testified, the condition that caused his injury was not the exposed pallet corners, it was the pallet's side openings.

*1.      Canales's Account*

Specifically, Canales testified that when he was selecting a watermelon, his boot entered the opening in the side of the pallet. "[W]hen I picked up the watermelon, I started to walk to my right to take it to the cashier to pay, and my right boot, the tip of my boot, got hung up in the corner of the pallet and I went down and fell." He explained that when he was selecting a watermelon, his boot went inside the pallet opening. In his words, he "stepped in" to the pallet, and "as I stepped

out trying to remove [the watermelon], my boot got hung up in the corner there." Notably, Canales added that "I didn't trip. I got—my foot got stuck—stuck in the pallet."

### 2. Distinguishing the Conditions

Canales's testimony, and other evidence, distinguishes the two conditions: exposed pallet corners and pallet side openings. We note that either condition can exist independently of the other. A pallet display could have side openings but no exposed corners, and a pallet display could have exposed corners without side openings. Further, neither condition requires any interaction with the other to create a risk of harm. For example, a person can trip over an exposed corner irrespective of any pallet openings, and a person can get their foot stuck in a pallet's side opening irrespective of any exposed corners.

### 3. Evidence of Pallet's Side Openings Condition

Although witnesses testified regarding Pay and Save's knowledge of the risk of harm from tripping on an exposed pallet corner, that evidence pertains to a different condition; it is no evidence of Pay and Save's knowledge with respect to the risk of harm from the pallet's side openings. *See Aguilar*, 251 S.W.3d at 513 (reviewing the defendant's "actual knowledge that [the complained of] condition present[ed] an unreasonable risk of harm"); *Brinson Ford*, 228 S.W.3d at 162–63 (same). Therefore, Canales's burden was to prove that the pallet's side openings presented a *sufficient probability* of an injury occurring that Pay and Save foresaw, or should have foreseen, as *likely* to happen. *See McIntire*, 646 S.W.3d at 803; *Brown*, 80 S.W.3d at 556; *Seideneck*, 451 S.W.2d at 754.

## H. No Direct Evidence of Pay and Save's Actual Knowledge

Canales could prove Pay and Save's actual knowledge of an unreasonably dangerous condition by direct evidence, but here, there is none. There was no documentary evidence that

showed Pay and Save knew that the pallet's side openings posed an unreasonable risk of harm, and none of Pay and Save's representatives testified to that effect.

For example, Griffith, Pay and Save's corporate representative, testified that it was foreseeable that a customer could put a foot inside the pallet side opening, but he also testified that that he had never heard of a person getting their foot stuck in a pallet, and he had no knowledge that the pallet's side openings posed an unreasonable risk of harm.

DeLeon, Pay and Save's store manager at the time of the accident, testified that he could not think of anything that would prevent a customer from getting their foot stuck in a pallet, but it was not industry practice to cover up the pallet's side openings.

No other Pay and Save employees testified that the pallet's side openings presented an unreasonable risk of harm.

Accordingly, we conclude there was no direct evidence that Pay and Save had actual knowledge that the pallet's side openings presented an unreasonable risk of harm. *Cf. Aguilar*, 251 S.W.3d at 514; *Brinson Ford*, 228 S.W.3d at 162.

## I.     Circumstantial Evidence of Pay and Save's Knowledge

We turn now to whether circumstantial evidence exists that directly, or by reasonable inference, supports the finding that Pay and Save knew or reasonably should have known that the pallet's side openings presented a sufficient probability of an injury occurring that Pay and Save foresaw, or should have foreseen, as likely to happen. *See McIntire*, 646 S.W.3d at 803; *Seideneck*, 451 S.W.2d at 754; *see also Stewart*, 249 S.W.3d at 415.

It was undisputed that Pay and Save placed the pallet displays in its store and knew the pallets had uncovered side openings. Griffith testified that it was foreseeable that a customer buying watermelons at the Freer store would (1) walk up to a watermelon bin, (2) reach into the bin, (3) touch and hold the watermelons, and (4) in some manner, when getting closer to the bin,

put a foot inside the pallet's side opening. And DeLeon acknowledged that a customer could get a foot stuck inside the pallet's side openings.

Viewing this evidence in the light most favorable to the verdict and disregarding contrary evidence, we conclude the jury could have reasonably inferred that a customer could get a foot stuck in a pallet side opening, which could cause the customer to fall and be injured. *See Stewart*, 249 S.W.3d at 414–15. Thus, the evidence was legally sufficient to support the jury's finding that Pay and Save had actual knowledge of the unreasonable risk of harm associated with the pallet's side openings. *See Crosstex*, 505 S.W.3d at 613; *Stewart*, 249 S.W.3d at 414–15.

**J.      Factual Insufficiency of Pay and Save's Knowledge**

We turn now to Pay and Save's argument that the evidence of its knowledge of an unreasonable risk of harm was not factually sufficient. For our factual sufficiency review, we view all the competent evidence in a neutral light, and we do not disregard contrary evidence. *See Crosstex*, 505 S.W.3d at 615; *Ellis*, 971 S.W.2d at 406–07. As required, we detail the evidence below. *See Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681 (Tex. 2006) (per curiam).

*1.      Existence, Use of Pallets with Open Sides*

It was undisputed that Pay and Save placed the pallets in their Freer store, and Pay and Save knew the pallets had side openings.

Griffith and DeLeon, Pay and Save employees, acknowledged that a person could stick their foot into a pallet's side openings.

Balian, Canales's expert, testified that a person getting a foot stuck in a pallet was a hazard "known by the industry," but he did not testify that Pay and Save or the industry knew there was a probability or likelihood of injury. *Cf. McIntire*, 646 S.W.3d at 803 (applicable test); *Seideneck*, 451 S.W.2d at 754 (same).

And Kendzior, another of Canales's experts, testified about a patent issued for a pallet skirt, which would cover the pallet's side openings. He testified that the patent "kind of made it the standard that became the kind of the standard way to display products on the retail floor is to use pallet guards." Later he testified that, in his opinion, the industry standard for pallet displays includes covering the side openings using pallet guards or pallet skirts.

### 2. Contrary Evidence

Here, there was overwhelming evidence against the jury's finding that Pay and Save knew or reasonably should have known that a pallet's side openings presented a sufficient probability of an injury occurring that Pay and Save foresaw, or should have foreseen, as likely to happen. *See McIntire*, 646 S.W.3d at 803; *Seideneck*, 451 S.W.2d at 754; *Dietz v. Hill Country Rests., Inc.*, 398 S.W.3d 761, 767 (Tex. App.—San Antonio 2011, no pet.); *see also In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) ("Factual sufficiency . . . requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding."); *Crosstex*, 505 S.W.3d at 615; *Ellis*, 971 S.W.2d at 406–07.

Such a probability or likelihood was negated by (1) a lack of reports of prior injuries or dangers, (2) the industry's standard or accepted practice, and (3) the absence of any violation or disregard for any applicable governmental or industry safety standards or regulations.

We begin with the absence of prior injuries or reports.

### 3. Prior Injuries or Reports

Although an absence of prior injuries or reports of danger does not categorically disprove actual knowledge, *see Aguilar*, 251 S.W.3d at 513, because Canales had to prove that Pay and Save knew or should have known of the sufficient probability or likelihood of harm, *see Seideneck*, 451 S.W.2d at 754, the absence of reports from many stores over many years weighs heavily against the jury's finding, *see Brinson Ford*, 228 S.W.3d at 162; *Dietz*, 398 S.W.3d at 767.

### a.  Pay and Save's Stores

To begin, we note it was undisputed that Pay and Save operates about 150 retail grocery stores, and it has been using open-sided pallet displays for many years.  Besides Canales's accident, there was *no* evidence that Pay and Save had received *any* reports of *any* person getting their foot stuck in a pallet's side openings.  *Cf. Aguilar*, 251 S.W.3d at 513 (no prior accident reports).

For example, Griffith, who had worked in the retail grocery business for decades, testified that watermelons were displayed in cardboard bins on top of open-sided pallets for "[a]s long as I can remember."  He repeatedly testified that, until Canales's accident, Pay and Save had never had a report of anyone getting a foot stuck in a pallet.  He acknowledged that Pay and Save had claims involving people *tripping* over pallets, but *none* of the reports stated that the person's foot became *stuck* in the pallet opening.  *Cf. Brinson Ford*, 228 S.W.3d at 162–63 (no record of any falls); *Dietz*, 398 S.W.3d at 767 (same).

Consistent with Griffith's testimony, Kendzior acknowledged that there was no evidence that anyone had ever made a claim of getting their foot trapped in a pallet's side openings at a Pay and Save store.  And Balian admitted that he did not know if anyone had ever gotten their foot stuck in a pallet's side openings.

### b.  Other Grocers' Stores

There was also no evidence of injuries or reports of a person getting a foot stuck in a pallet at other grocers' stores.

Griffith testified that he is a member of the National Grocers Association (NGA), which is the largest national independent grocer chain and trade association in the country.  He attends four to five of the NGA's trade shows each year, and those shows include discussions on safety.  He heard discussions about persons tripping on a pallet, but he had never heard a report from other grocers about someone getting their foot stuck in a pallet's side opening.

And Canales provided no evidence of persons getting their foot stuck in a pallet's side openings at other grocers' stores.

c.  Relevant Cases

The absence of reports of injuries or dangers has been addressed in other cases, and two are especially pertinent here.

(1)  *Brinson Ford*

In *Brinson Ford*, a woman visiting a car dealership fell when she stepped off a pedestrian ramp, and she sued the dealership for her injuries.  *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161 (Tex. 2007).  The plaintiff claimed that the ramp's configuration in the area she fell posed an unreasonable risk of harm, but the court stated that "Brinson Ford had no record that anyone had ever fallen from [the ramp] in the nearly ten years between the business's opening and [the plaintiff's] fall."  *Id.* at 162–63.

In its conclusion, the court noted that the area of the ramp where the plaintiff fell met applicable safety standards and it reiterated that "[n]o other customer visiting the property over a ten-year period had ever been injured by the ramp, nor has the dealership received complaints about the ramp's safety."  *Id.* at 163.  The court held "as a matter of law, [that] the ramp at issue in this case did not pose an unreasonable risk of harm."  *Id.*

(2)  *Dietz v. Hill Country Restaurants*

In *Dietz*, a restaurant customer fell while she was walking on an aggregate walkway (made of pebbles and concrete) when she stepped into a depression.  *Dietz v. Hill Country Rests., Inc.*, 398 S.W.3d 761, 767 (Tex. App.—San Antonio 2011, no pet.).  "Dietz . . . testified that she had walked on the walkway on several prior occasions, and [she] did not have a problem with the walkway in the past."  *Id.*

The restaurant's general manager testified that the walkway had not changed for more than twelve years, and in that period, "no one other than Dietz had ever reported a fall or an injury on the walkway, or complained that the walkway was unsafe." *Id.*

*Dietz* noted that "there was no evidence of other falls attributable to this condition [n]or was there evidence of any complaints about this condition." *Id.* And like *Brinson Ford*, *Dietz* concluded there was no evidence that the walkway posed an unreasonable risk of harm.

### d. Absence of Reports Weighs Heavily Against Finding

Although circumstantial evidence may also support a finding of actual or constructive knowledge, *see Keetch v. Kroger Co.*, 845 S.W.2d 262, 266 (Tex. 1992), "courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Aguilar*, 251 S.W.3d at 513 (citing *Brinson Ford*, 228 S.W.3d at 163). And like *Brinson Ford* and *Dietz*, we do so here.

Here, the uncontroverted evidence shows a complete absence of any reports of prior injuries or dangers from the pallet's side openings at Pay and Save's Freer store, or from any of its other stores. Further, there was no evidence that H.E.B., Walmart, or any other grocery store had reports of injuries or dangers from open-sided pallets. Moreover, the lack of reports of injuries or dangers was an important factor in *Brinson Ford*'s and *Dietz*'s conclusions that those conditions did not present unreasonable risks of harm. *See Brinson Ford*, 228 S.W.3d at 162–63; *Dietz*, 398 S.W.3d at 767–68.

Guided by those precedents, we conclude that the complete absence of any reports of injuries or dangers weighs heavily against the jury's finding that Pay and Save knew or reasonably should have known that the pallet's side openings presented a *sufficient probability* of an injury occurring that Pay and Save foresaw, or should have foreseen, as *likely* to happen. *See McIntire*,

646 S.W.3d at 803 (applicable test); *Seideneck*, 451 S.W.2d at 754 (same); *see also Stewart*, 249 S.W.3d at 415; *Brown*, 80 S.W.3d at 556; *Dietz*, 398 S.W.3d at 767.

### 4.    Industry Standard, Accepted Practice

In addition to the absence of reports of injuries or dangers, the evidence of the industry standard or accepted practice also weighs heavily against the jury's finding that Pay and Save knew or reasonably should have known that the pallet's side openings presented a sufficient probability of an injury occurring that Pay and Save foresaw, or should have foreseen, as likely to happen. *See Seideneck*, 451 S.W.2d at 754; *see also Brown*, 80 S.W.3d at 556; *Dietz*, 398 S.W.3d at 767.

Several witnesses testified that it was industry standard or accepted practice in South Texas, including at stores such as Walmart and H.E.B., to display watermelons in cardboard bins on top of open-sided pallets without using pallet skirts or covers.

For example, DeLeon, Pay and Save's store manager at the time of the accident, testified that displaying watermelons in cardboard bins on top of open-sided pallets was the industry standard. Thibodeaux, one of Pay and Save's experts, agreed that it was common practice for grocers to display watermelons in bins on open-sided pallets.

Kendzior testified that both Walmart and H.E.B. use the same type of carboard bins on top of open-sided pallets, and they do not use pallet skirts or covers. And Balian, another of Canales's experts, agreed that using bins on open-sided pallets was "the accepted practice in South Texas."

To reiterate, both of Canales's experts admitted that it was industry standard in South Texas to display watermelons in cardboard bins on top of open-sided pallets, and those type of displays had been used, and were still being used, by Walmart and H.E.B.

This evidence of the industry standard or accepted practice of displaying watermelons using cardboard bins on top of open-sided pallets weighs heavily against the jury's finding.

### 5. No Safety Standards Violations

The evidence that Pay and Save was not disregarding or violating any applicable safety standards also weighs against the jury's finding.

For example, Kendzior testified that the National Floor Safety Institute, which he founded, was developing standards for the American National Standards Institute which addressed using pallet displays in retail stores, but at the time of the accident and at the time of trial, there were no written standards on using pallets or pallet guards in retail stores. *Cf. McIntire*, 646 S.W.3d at 803 (noting that "*applicable* safety codes may be relevant to assessing whether a condition poses an unreasonable risk of harm," but inapplicable codes are not).

Kendzior also testified that he did not know of any federal law, state law, or local ordinance against using open-sided pallets in grocery stores.

Kendzior further testified that there was no governmental requirement or safety standard pertaining to retail stores that required pallet side openings to be covered or closed. But the mere fact that the pallet was not foolproof, without more, is no evidence that it presented an unreasonable risk of harm. *See Brinson Ford*, 228 S.W.3d at 163 ("[A] condition is not unreasonably dangerous simply because it is not foolproof." (quoting *Brookshire Grocery*, 222 S.W.3d at 408)); *see also McIntire*, 646 S.W.3d at 803.

Finally, Kendzior testified that an issued patent identified a pallet's side openings as presenting a risk to a person's foot becoming stuck and the person being injured. But the mere existence of such a patent is no evidence that Pay and Save knew or should have known a pallet's uncovered side openings presented a probability or likelihood of injury. *Cf. Brinson Ford*, 228 S.W.3d at 163; *City of Dallas v. Thompson*, 210 S.W.3d 601, 604 (Tex. 2006) ("[E]vidence that an owner or occupier knew of a safer, feasible alternative design, without more, is not evidence that the owner knew or should have known that a condition on its premises created an unreasonable

risk of harm." (quoting *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102 (Tex. 2000)); *Seideneck*, 451 S.W.2d at 754 (applicable test).

The evidence that Pay and Save was following an industry standard or accepted practice which did not disregard or violate any applicable law or safety standard also weighs against the jury's finding that Pay and Save knew or reasonably should have known that the pallet's side openings presented a sufficient probability of an injury occurring that Pay and Save foresaw, or should have foreseen, as likely to happen. *See McIntire*, 646 S.W.3d at 804; *Seideneck*, 451 S.W.2d at 754.

*6.     Summary*

To summarize, Canales's burden was *not* to prove that Pay and Save knew or should have known there was a *possibility* that someone's foot might enter a pallet's side opening; the evidence easily met that burden. Instead, Canales's burden was to prove that Pay and Save knew or reasonably should have known that the pallet's side openings presented "a *sufficient probability* of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as *likely* to happen." *See Seideneck*, 451 S.W.2d at 754 (emphasis added); *see also McIntire*, 646 S.W.3d at 803.

The testimony that Pay and Save knew a person's foot could enter the pallet opening is barely more than a glimmer of evidence that Pay and Save knew or reasonably should have known the pallet opening posed an unreasonable risk of harm. *See Seideneck*, 451 S.W.2d at 755; *Dietz*, 398 S.W.3d at 767.

And the uncontroverted lack of reports of prior injuries or dangers from Pay and Save's many stores; the widely accepted, long-used industry practice of displaying watermelons in cardboard bins on top of open-sided wooden pallets; and the absence of any governmental regulation or requirement prohibiting or restricting the use of such displays was overwhelming

evidence against the jury's finding. *Cf. McIntire*, 646 S.W.3d at 803. The jury could not have reasonably credited this evidence in favor of its finding that Pay and Save knew or reasonably should have known that there was a probability or likelihood that a pallet's side openings would cause Canales's accident or a similar harm. *See In re Commitment of Stoddard*, 619 S.W.3d 665, 677 (Tex. 2020); *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018).

Having viewed in a neutral light all the evidence regarding Pay and Save's actual or constructive knowledge that the pallet's side openings presented an unreasonable risk of harm, and despite deferring to the jury's weight and credibility determinations, we nevertheless conclude that the evidence that the jury could not have reasonably credited in favor of its finding was so significant that the jury could not have reasonably found that Pay and Save knew or reasonably should have known that the pallet's side openings presented a *sufficient probability* of an injury occurring that Pay and Save foresaw, or should have foreseen, as *likely* to happen. *See McIntire*, 646 S.W.3d at 803; *Seideneck*, 451 S.W.2d at 754; *see also Brown*, 80 S.W.3d at 556; *Dietz*, 398 S.W.3d at 767.

Thus, the evidence is factually insufficient. *See In re Commitment of Stoddard*, 619 S.W.3d at 677; *In re A.C.*, 560 S.W.3d at 631.

On the question of premises liability, we overrule Pay and Save's challenge to the legal sufficiency of the evidence, but we sustain its factual sufficiency challenge.

## GROSS NEGLIGENCE

We now address Pay and Save's challenge to the jury's finding of gross negligence. We begin our analysis with the standard of appellate review that governs our analysis.

### A. Standard of Review

"Gross negligence must be proven by clear and convincing evidence." *Columbia Med. Ctr. Of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008) (citing TEX. CIV. PRAC. &

REM. CODE ANN. § 41.003(a)(3)). "[W]henever the standard of proof at trial is elevated, the standard of appellate review must likewise be elevated." *S.W. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004).

> In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard all evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

Accordingly, in this case we apply a heightened standard of review. We review all the evidence to determine whether the jury could have reasonably formed a firm belief or conviction that Pay and Save's use of open-sided pallets under the cardboard watermelon bins departed so far from the standard of care as to create an extreme risk of harm to others and that Pay and Save was subjectively aware of, but consciously indifferent to, this risk. *Hogue*, 271 S.W.3d at 249; *Garza*, 164 S.W.3d at 627.

## B.    Applicable Law

Gross negligence has two elements: one objective, one subjective. *Medina v. Zuniga*, 593 S.W.3d 238, 247 (Tex. 2019); *Hogue*, 271 S.W.3d at 248.

"First, viewed objectively from the actor's standpoint, the act or omission complained of must depart from the ordinary standard of care to such an extent that it creates an extreme degree of risk of harming others." *Hogue*, 271 S.W.3d at 248. Gross negligence involves an objectively higher standard than ordinary negligence. *Id.*; *Medina*, 593 S.W.3d at 249. "Extreme risk" is the

likelihood of serious injury to the plaintiff—rather than "a remote possibility of injury or even a high probability of minor harm"—to be examined not in hindsight, but rather prospectively from the perspective of the actor. *Hogue*, 271 S.W.3d at 248.

"Second, the actor must have actual, subjective awareness of the risk involved and choose to proceed in conscious indifference to the rights, safety, or welfare of others." *Id.*; *accord Medina*, 593 S.W.3d at 247.

## C.      Parties' Arguments

Pay and Save argues there is legally insufficient evidence to support the jury's findings that Pay and Save's actions or omissions constituted an extreme degree of risk and that Pay and Save was actually or subjectively aware of that risk yet chose to proceed with conscious indifference regarding Canales's safety.

Canales does not agree. Instead, he argues the trial court did not err in entering judgment on the verdict for gross negligence and exemplary damages in that there was more than sufficient evidence of Pay and Save's liability for the same.

## D.      Jury Charge

The trial court submitted the following gross negligence question to the jury:

QUESTION NUMBER FOUR

Do you find by clear and convincing evidence that the harm to ROEL CANALES resulted from gross negligence?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Gross negligence" means an act or omission by PAY AND SAVE, INC,

1.  which when viewed objectively from the standpoint of PAY AND SAVE, INC. at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

2.  of which PAY AND SAVE, INC. has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

The jury's answer was "Yes."

**E.      Extreme Degree of Risk**

Canales argues the evidence showed that the pallets were not visible because they were covered by cardboard, and he could not have been expected to have seen and appreciated the danger. Expert testimony showed that Canales could not be expected to have seen and appreciated the danger. Canales further contends that Pay and Save admitted it gave no warnings regarding the pallet's side openings, which caused Canales's fall, but it chose to claim there was no danger. Based on circumstantial evidence, Canales contends, there was legally and factually sufficient evidence to support this element of gross negligence.

We disagree with Canales. The issue here is not whether the pallet's side openings were unreasonably dangerous. Rather, the issue is whether, from Pay and Save's viewpoint at the time of the accident, the pallet's side openings involved an extreme degree of risk. We conclude they did not.

*1.      Wal-Mart Stores, Inc. v. Alexander*

Pay and Save cites *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322 (Tex. 1993) as authority in support of its argument. In *Alexander*, the plaintiff was injured when she tripped and fell on a ridge at the base of a concrete ramp in front of a Wal-Mart store. *Id.* at 323. The plaintiff alleged the ramp was an unreasonably dangerous condition and that Wal-Mart failed to warn of or repair. *Id.* at 324. The jury found Wal-Mart was negligent and grossly negligent. *Id.* In reversing the court of appeals, the supreme court considered the following evidence as dispositive:

> The store had averaged 50,000 patrons per month in the three months it had been open before [the plaintiff's] accident. There was no evidence that anyone had tripped and fallen over the ridge before she did, and evidence that only one person . . . had as much as stumbled

there. Instead, Wal-Mart's complaints from patrons involved only bottles and other items falling from shopping carts.

*Id.* at 327. The court held that Wal-Mart's negligent failure to warn "simply did not impose an *extreme risk* creating the *likelihood* of serious injury." *Id.*

We agree that the facts in this case are analogous to *Alexander*.

#### 2. *Canales's Testimony*

Canales testified he had been at the Pay and Save store hundreds of times before his fall, sometimes to buy watermelons that were inside the display.

#### 3. *Griffith's Testimony*

Griffith testified that Pay and Save had about 150 stores in different states. He had been with Pay and Save since 2011. Prior to that, he worked with Super S stores as the Vice-President of Human Resources. In 2011, Pay and Save purchased the Super S stores. At that time, he was hired by Pay and Save and moved to the corporate office. Since the time he worked at the Super S stores until now, the stores used the same watermelon displays. No claims involving pallets' side openings had ever been filed.

Griffith testified that Pay and Save had many trip-and-fall claims involving the pallets, but none involving pallet openings. Griffith (and DeLeon) admitted it was foreseeable that someone's foot could slide inside the pallet's side openings. Warnings were placed on the exposed corners of the display to prevent people from tripping on the pallets' corners, but none existed to warn customers of the openings. Griffith testified that he assumed it could be true that the elderly were at a higher risk from falls. He acknowledged that if Canales had fallen and struck his head, he could have been killed.

### 4. Canales's Experts' Testimony

Both Kendzior and Balian testified that, for many years, retailers used produce displays that sat on open-sided pallets. Kendzior testified that beginning in 2002, this practice changed in the industry when the patent for pallet guards was approved. Balian testified that in South Texas, the practice did not change, and that many other companies continued to place watermelon bins on pallets with side openings. Both Kendzior and Balian testified that, nonetheless, the displays with open-sided pallets posed an unreasonable risk of harm and should be covered in some manner to protect customers. Neither testified that that the displays, as used by Pay and Save on the day of Canales's fall, posed an extreme degree of risk.

### 5. Evidence Not Clear and Convincing

Viewing the evidence in the light most favorable to the jury's verdict and disregarding disputed contrary evidence, there was some evidence that using open-sided pallets for watermelon displays was unreasonably dangerous. But viewed objectively from Pay and Save's viewpoint, the evidence to support a finding that Pay and Save's conduct involved an extreme degree of risk of harming others was not clear and convincing. *See Medina*, 593 S.W.3d at 247–48; *Hogue*, 271 S.W.3d at 248.

Pay and Save followed the industry practice when displaying its watermelons. Other South Texas stores displayed watermelons in the same way. No accidents involving the pallets' side openings were reported. Although trip-and-fall accidents involving pallets' exposed corners were reported, Pay and Save warned customers of the corner edges of exposed pallets to avoid that type of accident.

The only evidence that might pertain to the jury's finding of an "extreme degree of risk" is Griffith's statement that if Canales fell and hit his head, he could have died. This statement, however, is simply a remote possibility of injury that, from Pay and Save's perspective, is purely

speculative. *See Hogue*, 271 S.W.3d at 248. Regardless of the relative dangerousness of a condition, anyone could die if they fell and hit their head on a concrete floor.

Put simply, from all the evidence at trial, a jury could *not* find that, viewed objectively from Pay and Save's standpoint on the day of the accident, the pallet's side openings involved an extreme degree of risk considering that no other accidents like the one at issue had occurred before and that Pay and Save was following industry practices. For this reason, we conclude that the evidence presented at trial to support the element of "extreme degree of risk" was not clear and convincing. *See Medina*, 593 S.W.3d at 247–48; *Hogue*, 271 S.W.3d at 248.

### 6. Actual Subjective Awareness of the Risk Involved

Having determined that the first element of gross negligence was not supported by clear and convincing evidence, we need not address its second element.

We sustain Pay and Save's second issue.

We now address Pay and Save's third issue: damages.

## DAMAGES

In its third issue, Pay and Save argues that the evidence supporting the amount of damages was legally and factually insufficient, but its argument is moot.

Here, Pay and Save contested liability, and we have concluded that the evidence was not factually sufficient to support the jury's finding on premises liability. *See* TEX. R. APP. P. 44.1(b); *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 413 (Tex. 1998) ("If the appellant's only viable point is factual insufficiency, the court of appeals should remand for a new trial."). Because we will reverse the trial court's judgment and remand for a new trial on premises liability, we need not consider Pay and Save's challenges to the evidence supporting the jury's award of damages.

## CONCLUSION

Having reviewed the evidence under the appropriate standards of review, we reverse the trial court's judgment based on the following conclusions.

First, given the evidence, the jury could not have reasonably formed a firm belief or conviction that Pay and Save's use of open-sided pallets under the cardboard watermelon bins departed so far from the standard of care as to create an extreme risk of harm to others. Thus, the evidence of gross negligence was legally insufficient. We render judgment that Canales take nothing on his gross negligence claim.

Second, although there was some evidence to support the jury's finding that Pay and Save was negligent under a premises liability theory, the supporting evidence was so weak, and the controverting evidence was so significant, that the jury could not have reasonably found as it did.

We remand the cause to the trial court for a new trial on premises liability and damages.

Patricia O. Alvarez, Justice